UNITED STATES BUILDING & LOAN ASS'N v. MIDVALE HOME FINANCE CORPORATION et al.

No. 5462. Decided May 15, 1935. (44 P. [2d] 1090.)
Rehearing Denied June 25, 1935.

507

508

See opinion on rehearing, 86 Utah 522, 46 P. (2d) 672.

*Budge, Parker & Romney,* of Salt Lake City, for appellant.

*Geo. G. Armstrong, J. B. Smith, S. N. Cornwall, Willey & Willey, E. R. Christensen, Backman & Backman, P. C. Evans, E. L. Shields,* and *H. Van Dam, Jr.,* all of Salt Lake City, for respondents.

ELIAS HANSEN, Chief Justice.

Plaintiff brought this suit to recover on a promissory note for the principal sum of $88,375 and to foreclose a mortgage given as security for the payment thereof. The note and mortgage were executed by defendant Midvale Home Finance Corporation, hereinafter referred to as the finance corporation, in favor of the plaintiff. The note was indorsed by defendants D. M. Todd, Jr., B. J. Barnard, Herbert Taylor, J. E. Teague, George M. Turpin, S. M. Woolf, O. C. Bowman, L. F. Pitt, Shoras Loveless, and W. L. Woolf. The Anderson Lumber Company, a corporation, successor in interest of the Cross Lumber Company, a corporation, Elias Morris & Sons Company, a corporation, Francisco Solano, J. S. Johnson, Ideal Sand & Gravel Company, a corporation, G. L. Swanson; Frank H. Fox and William H. Tingley, a copartnership; C. E. Elkington, Harvey A. Marchant, A. N. Sisam, and the finance company, a corporation, successor in interest of the Salt Lake Pressed Brick Company, were either made parties defendants or intervened because they each claimed a mechanic's lien upon the premises covered by plaintiff's mortgage. The owners of such liens are referred to in the briefs of counsel as lien claimants, and we shall so refer to them hereafter in this opinion. O. W. Carlson was, by leave of court, made a party defendant because he was the receiver of the defendant finance corporation. Columbia Savings & Loan Association, hereinafter referred to as the loan association, was made a party defendant because it held a second mortgage upon the property covered by plaintiff's mortgage. The other parties defendants held in severalty contracts of purchase

of the property covered by plaintiff's mortgage. Those holding purchase contracts are referred to in the briefs of counsel as unit holders. We shall hereafter so refer to them.

Each of the defendant lien claimants answered the complaint and filed a cross-complaint in the cause whereby each sought to foreclose his lien on the mortgaged premises. A few lien claimants intervened in the cause and filed complaints in intervention seeking to foreclose liens on the mortgaged property. Each of the defendant unit holders answered and filed a cross-complaint whereby each sought to foreclose his vendee's lien on the mortgaged premises. Answers were filed to the cross-complaints and to the complaints in intervention, and in turn replies were filed to many of the answers. Numerous demurrers and motions were also filed in the cause. As none of the pleadings are brought in question, they need not be further referred to.

Upon the issues thus raised, a trial was had to the court sitting without a jury. The amounts owing upon the mortgage, upon the various mechanics' liens, and also the amounts which had been paid by the various unit holders upon their contracts, were agreed upon and a stipulation entered into by the parties fixing the same. The principal question litigated is the relative priorities of the various liens against the mortgaged premises. Plaintiff claims that its mortgage should be declared to be the first lien. Similar claims are made by the lien claimants and also the unit holders. The trial court found that the claims of the lien claimants were first in right, plaintiff's mortgage second, and the unit holders third. A decree was entered directing that the property be sold in separate parcels at sheriff's sale and the proceeds applied in the following manner: First, to the payment of the costs of sale; second, to the payment of compensation to O. W. Carlson for services rendered and expenses incurred while acting as receiver of the property; third, to the payment of the liens of the lien claimants; fourth, to the payment of plaintiff's mortgage; and, fifth, to the payment of the claims of the unit holders. Any

amount left after paying the foregoing claims was ordered paid to the finance corporation.

Plaintiff appeals from that part of the decree which fixes its mortgage as inferior and subject to the claims of the lien claimants. The unit holders cross-appealed from the whole of the decree, except those provisions thereof which awarded to each of them a lien on the property covered by his contract of purchase and upon which payments had been made. Plaintiff's original assignments of error are all directed to those portions of the findings of fact, conclusions of law, and decree which fix and determine that its mortgage is inferior and subsequent to claims of the lien claimants. In its brief plaintiff expressly waives all of its original assignments. In an amendment to its original assignments of error, plaintiff attacks the decree because no deficiency judgment was rendered against the defendants D. M. Todd, Jr., B. J. Barnard, Herbert Taylor, J. E. Teague, George M. Turpin, O. C. Bowman, L. F. Pitt, Shoras Loveless, and S. M. Woolf, the indorsers of the note sued upon by plaintiff. It is suggested in plaintiff's brief that the failure of the trial court to adjudge the indorsers of the note liable for a deficiency judgment was probably an inadvertence.

There would seem to be merit in the contention, but we are unable to grant the relief sought. Our authority is limited to a review of those portions of the decree from which plaintiff appeals. The notice of appeal which was served and filed by plaintiff expressly specifies those portions of the findings of fact, conclusions of law, and decree from which its appeal is prosecuted. Such notice is silent as to an appeal from that portion of the judgment which awards a deficiency judgment against the finance corporation but fails to include therein the indorsers of the note. The notice of appeal is likewise silent as to the matter now complained of. We may review only such portions of the judgment as are appealed from. R. S. Utah 1933, 104-41-6; *Rosenthyne* v. *Matthews-McCulloch Co.*, 51 Utah 38, 168 P.

957; *Tanner* v. *Provo Reservoir Co.*, 78 Utah 158, 2 P. (2d) 107. If plaintiff is entitled to a deficiency judgment against the indorsers of the note for the reasons stated it must seek such relief in the court below.

This brings us to a consideration of the cross-appeal of the unit holders. Their notice of appeal and all their assignments of error are joint. The fact that they have filed joint assignments of error relieves us from the necessity of considering some of the questions which are argued in their brief. The law is settled in this jurisdiction, as well as in most others, that, "where several appellants jointly assign errors, an assignment bad as to one of them must be held bad as to all." *McGuire* v. *State Bank of Tremonton*, 49 Utah 381, 164 P. 494. Two of the assignments of the unit holders attack findings made by the trial court. They have not, however, abstracted any of the evidence. The abstract of plaintiff is confined to such of the evidence as touches those portions of the judgment from which it appeals. It is not pointed out in the unit holders' brief or elsewhere wherein the evidence does not support the questioned findings, nor wherein the evidence touching such findings may be found in the transcript. Under such circumstances the appeal of the unit holders must be regarded as being prosecuted solely upon the judgment roll.

It is urged in the brief of the unit holders that they acquired homestead rights in and to the parcels of land covered by their respective contracts. Such contention can avail them nothing on this appeal. There were no homestead claims asserted in the court below. The pleadings made no issue and the trial court made no findings with respect to any homestead rights of the unit holders. There does appear among the files in this court a paper containing the caption of this cause and entitled, "Claim of Homestead Exemptions." The paper is directed to the sheriff of Salt Lake county and to plaintiff and its attorneys and to the various lien claimants and to their attorneys. It recites that:

"You and each of you are hereby notified that the following named defendants in the above entitled action claim a homestead in the property or lot in the Lincoln Subdivision of Midvale, Utah, set opposite their names."

Then follow the names of twenty-five unit holders, and opposite their names the numbers of lots and blocks. The paper bears what purports to be the signatures of counsel for plaintiff and various of counsel for the lien claimants as having been served with such paper. It was apparently served on them. It also bears the stamp of the clerk of the Third district court. Obviously, such a paper has no place in the record which is before us on appeal. It does not authorize this court to review any question as to the homestead claims of the unit holders.

The unit holders assign as error that part of the decree which directed that O. W. Carlson be paid for his services and expenses, as receiver of the finance corporation, out of the moneys derived from the sale of the property in question. It appears that Mr. Carlson was appointed receiver in an action other than the one now being reviewed. The court below found that Mr. Carlson was duly appointed receiver of the property in question on March 16, 1931, by the Third district court; that he qualified as such receiver, has continued to act as such since his appointment, has sold some of the property of the finance corporation, has appointed a watchman for the property, has appeared in this cause in his own behalf, has incurred obligations in the amount of $1,242, and is entitled to receive for his services as receiver and as attorney's fees for the receiver the reasonable value thereof in the sum of $1,500. No claim is made that the amount allowed is excessive, but it is apparently the unit holders' contention that the charges are improper and should not be preferred over their claims. The law applicable to the payment of the compensation and expenses of a receiver is thus stated in the case of *Grier* v. *Union Nat. Life Ins. Co.* (D. C.) 217 F. 293, 294:

"It is well settled that when many persons have a common interest in a trust property or fund, and one of them, for the benefit of all and at his own cost and expense, brings a suit for its preservation or administration, the court of equity in which the suit is brought will order that the plaintiff be reimbursed his outlay from the property of the trust or by proportional contribution from those who accept the benefits of his efforts.'

The basis for allowing a receiver expenses incurred in and compensation for the preservation of property in which several persons have a common interest does not depend upon the particular action in which such receiver is appointed. No authorities are cited by the unit holders which announce a different doctrine. Their claim that the court below erred in awarding the receiver of the finance corporation his expenses and compensation out of the proceeds of the sale of the property in litigation cannot be sustained.

It is next urged by the unit holders that the trial court erred in holding that their claims against the property in question are inferior to the claims of the lien claimants. A brief summary of some the facts disclosed by the trial court's findings will aid in the clarity of our discus- ▮▮ ▮▮ of the other questions of law upon which the parties divide. Early in the year 1930, the finance corporation undertook to promote the construction and sale of a number of homes in Midvale, Salt Lake county, Utah, on a tract of land known as the Lincoln subdivision. The land was platted into lots or units. In March of that year construction work was begun; the first material being furnished on March 25th. During the spring and fall of that year the finance corporation prosecuted the construction of homes, garages, and chicken coops upon the Lincoln subdivision with building materials and labor furnished by the parties heretofore referred to as lien claimants. As the work progressed, others of the lien claimants furnished materials and labor which went into the construction of the improvements. On October 10, 1930, the last lien claimant began to furnish material or labor for the construction of the improvements. The last material and labor were fur-

nished on February 21, 1931. At about the time construction work was begun the finance corporation began entering into contracts with the persons, who have heretofore been referred to as unit holders, for the sale and purchase of lots within the Lincoln subdivision. The contract with the first unit holder was entered into on March 29, 1930. The date of the last unit holder's contract was October 21, 1930. In order to secure funds with which to construct the improvements, the finance corporation entered into an agreement with the loan association, whereby the latter agreed to loan to the finance corporation the sum of $125,000. On April 24, 1930, the finance corporation executed a mortgage in favor of the loan association covering all of the land within the Lincoln subdivision as security for the payment of $125,000. The mortgage was recorded in the office of the County Recorder of Salt Lake county, Utah, on the date of its execution. Up to July 1, 1930, the loan association advanced to the finance corporation the sum of $37,500. Late in June the loan association notified the finance corporation that it desired to be relieved from its obligation to advance to the finance corporation any further sum of money. Thereupon, negotiations were had with plaintiff for a loan. The loan which is here in controversy was made and a mortgage given to secure the payment of the same. The mortgage which is being foreclosed in this suit bears date June 23, 1930. It was recorded in the office of the County Recorder of Salt Lake county, Utah, on July 1, 1930. At about the time the loan was made by the plaintiff to the finance corporation, the loan association released its mortgage for $125,000 and took a second mortgage on the land within the Lincoln subdivision as security for the $37,500 theretofore advanced to the finance corporation. That mortgage was not foreclosed in this suit.

The contracts entered into by the finance corporation and the various unit holders contain, among others, the following provisions:

"The Seller is hereby given the option to execute and maintain a loan secured by mortgage upon said property of not to exceed $——,

bearing interest at the rate of not to exceed ——— per cent per annum. When the principal has been reduced to the amount of the loan and mortgage, the Seller agrees to convey and the Buyer agrees to accept title to the above described property subject to said loan and mortgage."

Six of the contracts with the unit holders had the blanks filled in, some providing for a mortgage of $4,000, others for $5,000. All provided for interest at 8 per cent per annum. The blanks left for the amount of the mortgage and interest were not filled in in the other contracts. The price which the unit holders agreed to pay for their respective parcels of land varied from $9,300 to $11,900. At the time of the trial, payments had been made on their contracts by all of the unit holders who are seeking to impress a lien upon the property involved in this litigation. The amount found owing to the unit holders by the finance corporation on account of payments made and interest thereon varies from $786,60 to $3,295.36. By the terms of the contract between the finance corporation and the unit holders, the finance corporation agreed to construct on each lot or unit a home, a garage, and a chicken coop. By a supplemental agreement the finance corporation agreed to supply each unit holder with 2,000 chickens. The unit holders were to make payments by installments extending over a long period of time. The contracts between the unit holders and the finance corporation were not recorded, but at the time plaintiff made the loan to the finance corporation it (plaintiff) knew that a number of contracts had been entered into with the unit holders and was also familiar with the fact that the finance corporation intended to sell such lots or units within the Lincoln subdivision as had not theretofore been sold. Before the finance corporation had completed the contemplated improvements on the Lincoln subdivision, and before it supplied the unit holders with chickens, it became financially unable to perform its contract with the unit holders. Being unable to secure the improved lots and chickens contracted for, the unit holders in this suit seek to

impress a vendee's lien upon the various lots or units covered by their respective contracts for the amount paid on each of said contracts. As heretofore indicated in this opinion, it is their contention that such vendee's liens are superior to the mechanics' liens and mortgage here being foreclosed. It will be observed the first materials were furnished and the first labor performed for the construction of the improvements on the property in controversy four days before the first contract was entered into between the finance corporation and the unit holders.

Comp. Laws Utah 1917, §§ 3734 and 3735, provide:

"3734. The liens provided for herein are preferred to any lien, mortgage, or other incumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished; also to any lien, mortgage, or other incumbrance of which the lienholder had no notice and which was unrecorded at the time the building, improvement, or structure was commenced, work done, or materials commenced to be furnished.

"3735. The liens herein provided shall relate back to and take effect as of the time of the commencement to do work upon and furnish materials on the ground for the structure or improvement, and shall have priority over any lien or incumbrance subsequently intervening, except a lien herein provided for of the same class, or which may have been created prior thereto, which was not then recorded and of which the lienor under this chapter did have actual notice."

The substance of the two sections just quoted is now contained in R. S. Utah 1933, 52-1-5. It is reasonably clear that the two sections quoted place all mechanics' liens of the same class not only without priority among themselves, but also that the rights of all of the liens of the same class attach as of the date when the first lien of such class attached. Such is the construction placed upon a similar statutory provision by the Supreme Court of Minnesota in the case of *Gardner* v. *Leck,* 52 Minn. 522, 54 N. W. 746. The unit holders' contracts were not recorded when the labor was performed and materials furnished for the construction

of the improvements on the property in controversy. There is no evidence which shows or tends to show that the lien claimants had knowledge of the contracts held by the unit holders. It was urged at the oral argument that the claims of the lien claimants did not attach until the title to the property in question vested in the finance corporation; that when the first materials and labor were furnished the finance corporation was without title and that some of the unit holders had entered into the contracts for the purchase of the property in which they claimed vendees' liens before title passed to the finance corporation, and hence such vendees' liens are superior to the mechanics' liens. To support such contention reliance is had upon the case of *Pacific Corporation* v. *Oregon Portland Cement Co.,* 133 Or. 223, 286 P. 520, 289 P. 489, 72 A. L. R. 1507. That case is authority for the doctrine that a mechanic's lien attaches to such and only such interest as the one contracting for the labor and material has in the property when the labor and material are furnished. When, however, labor and materials are furnished to one not an owner, the lien attaches to the title the instant title vests in the owner so contracting for labor and materials furnished before he became the owner. Upon principle, it would seem that what is there said with respect to a mechanic's lien also applies to a vendee's lien. That is to say, a vendee's lien attaches only to such interest as the vendor has in the property sold. The principles of law announced in that case do not aid the unit holders in the instant case because, they having jointly assigned errors, their right to prevail on the assignment now under review is measured and determined by the date when the last unit holder's contract was entered into. That is to say, the claims of the lien claimants attached as of the date when the first materials were furnished and the first labor performed while the liens of the unit holders, because they jointly assign errors, are all postponed to the date of the last unit holder's contract. The claims of the lien claimants are prior in right to the claims of the unit holders.

It is next urged by the unit holders that the liens filed by the lien claimants are fatally defective in that they fail to state the amount and value of materials and labor ▮▮▮ furnished to each unit. Our attention is directed to Comp. Laws Utah 1917, § 3737, now R. S. Utah 1933, 52-1-8. It is there provided:

"Liens against two or more buildings, mining claims or other improvements owned by the same person or persons may be included in one claim; but in such case the person filing the claim must designate therein the amount claimed to be due to him on each of such buildings, mining claims or other improvements."

A similar question was involved in the case of *Eccles Lumber Co.* v. *Martin*, 31 Utah 241, 87 P. 713, 714. The law with respect to the acquisition and enforcement of mechanics' liens was substantially the same at the time herein involved as it was at the time the rights of the parties attached and the decision was rendered in the Eccles Lumber Company Case. The unit holders attempt to distinguish that case from the case in hand upon the ground that in the former case the two houses had not been sold to two different persons, while in the instant case the unit holders have contracted in severalty for the purchase of the lands in question. The distinction cannot be successfully maintained. As heretofore indicated in this opinion, the liens of the lien claimants attached before any of the claims of the unit holders. All lien claimants are entitled to have their liens attach as of the time the first material was funished or as soon as title to the property vested in the finance corporation, while the unit holders having jointly assigned errors, their claims must be tested by the rights of the unit holder who last entered into a contract with the finance corporation. Moreover, there is no evidence which shows that the lien claimants had either actual or constructive notice of the fact that contracts were being entered into between the unit holders and the finance corporation. The court below found in its finding No. 10 that the "real estate above described and the buildings erected thereon as

above set forth were and are and do constitute one entire investment and one entire enterprise." There are other findings to the same effect. The unit holders assign as error the making of finding No. 10 above quoted. In one of their assignments they assert that "finding of fact No. 10 is contrary to the evidence," but as heretofore indicated in this opinion they do not abstract the evidence or any part thereof and they do not point out in their brief or elsewhere wherein the finding is contrary to the evidence. Upon the authority of the doctrine announced in the case of *Eccles Lumber Co.* v. *Martin,* supra, the unit holders are not entitled to prevail upon their claim that the liens filed by the lien claimants are defective and unenforceable. The liens of the lien claimants are superior in right to the liens of the unit holders.

The unit holders further urge that their lien is superior to plaintiff's mortgage. As heretofore stated in this opinion, some of the contracts between the unit holders and the finance corporation were entered into before and some after plaintiff acquired its mortgage. It also appears and the trial court found that at the time the finance corporation executed the mortgage in favor of the plaintiff the latter knew that some of the unit holders held contracts for the purchase of part of the Lincoln subdivision and that the finance corporation contemplated entering into other similar contracts. It is earnestly urged on behalf of the unit holders that plaintiff's mortgage is inferior to the vendees' liens, especially as to those unit holders who entered into contracts of purchase prior to the execution and recordation of plaintiff's mortgage. On the contrary, plaintiff contends that its right should be measured by such rights as the loan association would have had if it had advanced to the finance corporation the $125,000 which it agreed to advance when it received and recorded a mortgage for that amount. Plaintiff's contention in such respect is bottomed on the claim that it is entitled to be subrogated to such rights as the loan association would have

had if it had fulfilled its contract to advance $125,000 to the finance corporation. We do not deem it necessary to discuss the doctrine of subrogation as applied to the facts in the instant case because, as heretofore held in this opinion, the unit holders having jointly assigned errors, their rights, unlike the rights of the lien claimants, are fixed by the rights of the unit holder who last entered into a contract of purchase. So viewing the unit holders' vendees' liens, they are subsequent in time to plaintiff's mortgage.

It remains to be determined whether or not plaintiff's mortgage is inferior to the vendees' liens of the unit holders because at the time it received its mortgage it knew that the finance corporation had sold or intended to sell its property in various units. The unit holders contend that because the mortgagee knew that the finance corporation had sold a part and intended to sell the remainder of its property in units, it should not be permitted to claim a lien against each unit for the full amount of the mortgage. If the unit holders were here seeking to limit the mortgagee's lien on each unit of land to the amount which is still unpaid on each contract of purchase there may be merit to such claim. They, however, make no such contention, and therefore we need not and do not pass upon their rights in such particular. The finance corporation having failed and being unable to perform its contracts with the unit holders, the latter seek merely to enforce their vendees' liens against the property covered by the contracts of purchase. The unit holders are not here seeking specific performance of their contracts. We are, therefore, not called upon to determine their rights as against the plaintiff in a proceeding to enforce specific performance. Plaintiff was under no obligation to construct the homes and garages or to supply the chickens contracted for by the unit holders. The priority and amount of plaintiff's lien on each unit within the Lincoln subdivision was not affected by the failure of the finance corporation to perform its contracts with the unit holders. The mortgage here being foreclosed having been executed and placed

of record before the last of the unit holders entered into a contract with the finance corporation, there is no escape from the conclusion that the lien of the mortgage is prior in right to the vendees' liens of the unit holders, at least to the extent of the amount remaining unpaid upon each of the contracts of purchase. Beyond that we do not decide, because the unit holders make no claim that they or either of them should be permitted to pay the balance remaining unpaid on their or his contract and thus relieve the premises covered by a contract or contracts from the lien. Apparently, such relief would avail the unit holders nothing. Otherwise, we assume that they would assert such claim. The unit holders must fail in their contention that their liens are superior to the lien of the mortgage.

The judgment is affirmed. As to costs: The record shows that plaintiff appealed for the purpose of attacking that part of the judgment which decreed its mortgage inferior to the lien of the lien claimants. Its appeal in such respect was abandoned. Plaintiff's costs on appeal other than a brief filed in answer to the unit holders' brief on appeal may not properly be taxed against the unit holders. No brief has been filed by the receiver. Plaintiff is awarded its cost against the unit holders of its brief filed in answer to the brief of the unit holders. Otherwise, no costs are allowed.

FOLLAND, EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.