366 P.2d 598

**UTAH SAVINGS AND LOAN ASSOCIA-TION, Plaintiff, Respondent and Cross-Appellant,**

**v.**

**Robert B. MECHAM et al., Defendants, Ludlow Plumbing Supply Company, Defendant and Appellant.**

No. 9159.

Supreme Court of Utah.

Nov. 22, 1961.

---

6. Ney v. Harrison, 5 Utah 2d 217, 299 P.2d 1114.

Backman, Backman & Clark, Salt Lake City, Heber Grant Ivins, American Fork, Thomas S. Taylor, George E. Ballif, Phillip V. Christenson, Provo, for appellant.

Aldrich & Bullock, Provo, Pugsley, Hayes, Rampton & Watkiss, Salt Lake City, for respondent.

CALLISTER, Justice.

This case is here on rehearing and was reported before in 11 Utah 2d 159, 356 P.2d 281 wherein we vacated the judgments of the lower court and remanded the causes for further proceedings consistent with that opinion.

The plaintiff, Utah Savings and Loan Association, commenced three separate actions against Robert B. Mecham and his wife to foreclose certain real estate mortgages. The complaint in the first case contained 24 separate causes of action to foreclose twenty-four separate mortgages on twenty-four separate houses in various stages of completion. The complaints in the other two cases contained six and four causes of action, respectively, to foreclose six separate mortgages on six separate houses and four separate mortgages on four separate houses. The Mechams were the owners of all thirty-four pieces of property. Among others, Ludlow Plumbing Supply Co., Masonry Specialties and Supply Co., and Central Utah Block Co.

appeared as defendants and asserted mechanics liens. These three cases were consolidated for trial.

As to all three actions, the trial court found the issues against Ludlow who appeals. In one of the cases the trial court found the issues in favor of Masonry Specialties and Central Utah Block and against the plaintiff, and the latter appeals.

The problem presented on appeal is the validity of the liens of the defendant materialmen, and, if valid, the enforcement thereof and their priority with relation to plaintiff's real estate mortgages.

In the early part of 1957, Robert B. Mecham and his wife commenced a program of constructing homes on several subdivisions located in Utah County. Part of the property involved in the program was owned by the Mechams and the balance was owned by several different corporations that were controlled by one Grow who is also the owner of the controlling stock in plaintiff corporation. Plaintiff helped finance the construction upon the Mecham property by loaning the Mechams money and accepting their promissory notes, which were secured by real estate mortgages.

Masonry Specialties and Central Utah Block filed a notice of lien which included 24 lots in what is designated as the La Mesa subdivision and 21 vacant lots (with which we are not concerned) all being the

property of the Mechams. Ludlow filed a lien against the same lots, and, in addition, included in the notice of lien other lots, 58 of which were owned by the Grow-controlled corporations. In none of the liens so filed did the claimants designate the amount claimed to be due on each lot.

Mechanic's liens are purely statutory, not contractual, and none can be acquired unless the claimant has complied with the statutory provisions creating the lien.[1] Section 38–1–7, U.C.A.1953 provides:

"Every person * * * must file for record with the county recorder of the county in which the property, or some part thereof, is situated a claim in writing, containing a notice of intention to hold and claim a lien, and a statement of his demand after deducting all just credits and offsets, with the name of the owner, if known, and also the name of the person by whom he was employed or to whom he furnished the material, with a statement of the terms, time given and conditions of his contract, specifying the time when the first and last labor was performed, or the first and last material was furnished, and also a description of the property to be charged with the lien, sufficient for identification, which

claim must be verified by the oath of himself or some other person."

This section would appear to apply only to a claim for work or material furnished on a single building, structure, or improvement. Section 38–1–8 provides:

"Liens against two or more buildings, mining claims or other improvements *owned by the same person or persons* may be included in one claim; but in such case the person filing the claim must designate therein the amount claimed to be due him on each of such buildings, mining claims or other improvements." (Emphasis added.)

In the Eccles Lumber case this court held that a claimant could obtain a valid lien against two or more buildings owned by the same person without including in the notice of lien a designation of the amount claimed to be due on each building as provided in Section 38–1–8. The court reasoned that a statement of the amount due on each building would be, in another form, merely a restatement of the amount of the claim as required by Section 38–1–7.

The court, in the subsequent case of United States Building & Loan Ass'n v. Midvale Home Finance Corp.,[2] followed the Eccles case. This case involved a subdivision and lien claimants who furnished

---

1. Eccles Lumber Co. v. Martin, 31 Utah 241, 87 P. 713.

2. 86 Utah 506, 44 P.2d 1090.

materials for the entire subdivision. Foreclosure was sought on a single mortgage covering the entire subdivision, which was owned by one person. The court held that the mechanics liens involved were not invalid because the notices failed to state separately the amount claimed to be due for materials and labor furnished to each separate lot in the subdivision.

Thus, the two foregoing cases interpret our mechanics lien statutes to mean that where labor is performed or materials furnished upon several buildings, *owned by the same person or persons,* a claimant may include in one claim all amounts due, and the claim will not be defective if the amount due on each separate building is not designated.

As previously pointed out, Ludlow's notice of lien included properties owned by the Grow-controlled corporations in addition to the properties owned by the Mechams. Therefore, its claim is defective and invalid because the materials, for which claim was made, were not furnished upon buildings owned by the same person or persons. Ludlow's contention that Grow was the real party in interest and that the Mechams took title to the properties in their name as agent for Grow is not substantiated by the record.

The notices of lien filed by Masonry Specialties and Utah Central Block included only properties owned by the Mechams and, therefore, under the authority of the Eccles and United States Building & Loan cases, are valid.

With regard the enforcement of these so-called "blanket liens," the court in the Eccles case had this to say:

" * * * To determine the equities as between lien claimants of the same class where the law requires them to prorate, it is important to determine the exact amount due to each claimant upon each of the several buildings or improvements erected on different parcels of land in order to prevent one from getting more than his share in case the proceeds of a sale of the property are insufficient to satisfy all the claimants in full. This, however, does not affect nor concern the owner of the property, nor does it affect the validity of the lien as such, as against him or the property. But it is argued that effect must be given to all the requirements of the statute respecting the things to be done to acquire a lien. This is true, but as we have attempted to show, a discrimination must be made between the things that are necessary to acquire a lien and those that are merely intended to protect the interests of the lien claimants between or among themselves. The statements in section 1387 (38–1–8), as we view it, clearly be-

long to the latter class. The statements of the claimant provided for in section 1386 (38–1–7) are made sufficient to acquire a lien and to protect the owner of the property. * * *" [31 Utah 341, 87 P. 717.]

Again:

"* * * the failure to state the amount due on each of several buildings or improvements could not invalidate the lien as against the property or the owner thereof, but its effect would only be to postpone the lien to others in the same class. * * *"

■ Thus, if a claimant files a lien, complying with the provisions of Section 38–1–7, against more than one piece of property belonging to the same owner without designating the amount due on each building or improvement as required by Section 38–1–8, he may enforce the same against the owner. However, if there are other lien claimants of the same class, his claim is subordinate to theirs if the claims of the latter are against only one of the buildings or improvements or, if against more than one, they complied with Section 38–1–8.

■■ Our law provides that a properly recorded mortgage has priority over a mechanic's lien for work or labor furnished but which was commenced after the recordation of the mortgage.[3] All of plaintiff's mortgages on the lots covered by the liens of Masonry Specialties and Central Utah Block were recorded prior to the time the latter commenced furnishing materials. However, these defendants contend that under the terms of the mortgages the plaintiff was not obligated to advance the moneys thereunder and, therefore, they should have priority over all sums advanced to the mechanics after work was commenced. A mortgagee, who is loaning money to a mortgagor-borrower, is obliged to pay out the money in accordance with the directions of the borrower.[4] This is especially so where, as in the instant case, a sum certain is stated in the mortgage and no provisions are made for future advances.[5] Thus, the mortgages here in question have priority over the liens of the defendants for moneys actually advanced thereunder unless plaintiff is in some way estopped from asserting this priority.

■ There is no doubt but that a mortgagee may be estopped from claiming a priority over a mechanic's lien.[6] However, in order to establish an estoppel against a mortgagee, the lien claimant must show some concealment, misrepresentation,

---

3. Section 38–1–5, U.C.A.1953.
4. Security Stove & Mfg. Co. v. Sellards, 133 Kan. 747, 3 P.2d 481, 76 A.L.R. 1397.

5. IV American Law of Property, Sec. 16.72 and 16.75; 76 A.L.R. 1402.
6. 57 C.J.S. Mechanics' Liens § 204, p. 768.

act, or declaration by the mortgagee upon which the lienholder properly relied and by which he was induced to act differently than he would otherwise have acted. A reading of the record and the findings of fact reveal that the defendant lien claimants were not induced by the plaintiff to act differently than they would otherwise have acted. They furnished materials to Mecham, as a contractor, and relied upon him and his credit for payment of the materials.

The judgment of the lower court in favor of the plaintiff and against Ludlow is affirmed. The judgments of the lower court in favor of Masonry Specialties and Central Utah Block and against plaintiff are reversed insofar as they conflict with the views expressed in this opinion.

Award of costs heretofore made by this court is vacated. Costs to plaintiff.

WADE, C. J., and McDONOUGH, J., concur.

HENRIOD, J., does not participate herein.

JONES, District Judge (dissenting).

I reaffirm the views stated in my prior opinion, 11 Utah 2d 159, 356 P.2d 281 and add the following comments in dissent to the opinion now adopted by the court. The prevailing opinion disposes of the estoppel issue with the assertion that a reading of the findings (and record) reveals that these lien claimants were not induced by the plaintiff to act differently than they would otherwise have acted. Were the findings complete on this subject I would have to concur. But in my view, these findings (with one or two minor exceptions) are wholly deficient and silent on this important and controlling issue with which the trial court was confronted.

Nor can I concur with the proposition that findings on the estoppel issue become unnecessary because the record has been examined and the weight of the evidence favors the plaintiff. I suggest that there is sufficient evidence in the record on which the trier of the facts might determine these facts; that cross-defendant Grow (alleged to be the principal stockholder and officer of plaintiff) and the defendant Mecham (owner-contractor), having suffered financial losses in connection with some kind of a joint-venture in home building, agreed to start new subdivisions and construction in order to recoup their losses; that accordingly, additional lands were acquired (some in the name of Mecham and some in the name of Grow); that "padded" notes secured by real estate mortgages were executed by the Mechams and placed by Grow with his (alleged) alter-ego, the plaintiff. These lien claimants, by then, were delivering materials. Plaintiff ostensibly held

these funds as a sort of trustee for the payment of claims arising during the new construction but permitted payment in full to construction firms owned or controlled by Grow; acquiesced in the "siphoning off" of some of these funds to Grow and Mecham to recoup their past losses; honored some claims but summarily refused to pay certain material-men, including appellant. I am not saying here that each and all of the foregoing facts are true, but I do suggest that this litigation should not be concluded until express findings are made by the trial court on these issues. It is not sufficient, in my humble opinion, to simply sweep all of these factual issues under the rug with the assertion that an examination of the record discloses no merits to these lien claimants' contentions. Under our rules and practice, as I understand it, these parties are entitled to have the facts spelled out in the findings, issue by issue.

I would, therefore, remand these cases back to the trial court with directions to make plenary findings on the issue of estoppel as raised by the pleadings. And should these issues be resolved in favor of these material-men an appropriate conclusion might be reached that plaintiff is estopped and that the liens are sufficient in law to be prior to plaintiff's claim.

CROCKETT, J., concurs in the views expressed in the dissent of JONES, District Judge.