436 P.2d 438

**Orville EVERSHED and Earl Hemmert, Plaintiffs and Respondents,**

v.

**Joy R. BERRY et al., Defendants,**

and

**Phillip Conley dba Hickory Pit, Defendant and Appellants.**

No. 10889.

Supreme Court of Utah.

Jan. 15, 1968.

Henry Nygaard, Beaslin, Nygaard, Coke & Vincent, Salt Lake City, for appellants.

Howard N. Jones, Biele, Jones & Murphy, Salt Lake City, for respondents.

CALLISTER, Justice.

This appeal involves the validity of a five-year written lease between a contract purchaser, Berry, as a lessor and his lessee, Conley, after the lessor's interest has been terminated by court decree.

The plaintiffs-respondents, hereinafter referred to as Evershed, owned commercial property in Murray, Utah. On October 20, 1965, Evershed sold his real estate to the Berrys under a real estate contract, which provided that no assignment or transfer of an interest in the property shall be valid unless made with the written consent of the seller. This contract was recorded.

On July 2, 1966, the Berrys entered into a five-year written lease for a portion of the premises with defendant-appellant, Conley, doing business as the Hickory Pit,

without the written consent of Evershed. Appellant took possession and expended a considerable sum of money on equipment and improvements, both on the interior and exterior of the premises, which were alleged to be observable and known to respondent.

The Berrys defaulted on their purchase contract, and Evershed initiated this action, joining Berrys and their tenants, to enforce the forfeiture provisions of the contract and to gain possession of the premises. On January 13, 1967, the trial court granted summary judgment terminating the interest of Berrys as contract purchasers of the property. Previously, default judgments had been entered against the other tenants of Berrys. In a supplementary hearing on March 30, 1967, the court granted a summary judgment, determining that the lease was not binding upon the contract seller, Evershed, and the lessee's right to possession of the premises was terminated. Appellant opposed respondent's motion for summary judgment, and by affidavit asserted certain representations, which it is claimed have established a triable issue of fact as to whether the lease has been terminated. Is there any basis upon which the appellant, Conley, could make out an agreement with the respondent, which would make the lease binding?

There is such a basis, if there were an attornment by the lessee to the paramount title of Evershed. The interest of the Berrys, the lessors, was terminated by court decree on January 13, 1967. The appellant in his brief relates that he was served on the 15th of December, 1966, and that right after such service he was led to believe that he could remain on the premises. On the 31st day of January, 1967, appellant received a Notice To Pay or Quit the Premises, he delivered a certified check to respondents which was accepted and retained. Respondent, Evershed, states in his brief that such acts as may be set forth by Conley are admitted by Evershed, and the dispute is as to the legal consequences of these acts.

These facts are sufficient to indicate a genuine issue for trial, and summary judgment should not be granted. There is a genuine issue as to whether after the interest of the Berrys was terminated, there was an express or implied agreement by Conley to become the tenant of Evershed for the balance of the term and consent by Evershed to accept him under such terms.[1]

In certain aspects the relationship between the Berrys and Evershed was that of a mortgagor-mortgagee.[2]

* * * The rights and liabilities of the parties under a lease made after the

1. Geo. Benz & Sons v. Willar, 198 Minn. 311, 269 N.W. 840, 109 A.L.R. 443 (1936).

2. Pearce v. Shurtz, 2 Utah 2d 124, 127, 270 P.2d 442 (1954).

mortgage are very different from those which exist when the mortgage is made after the lease. There is then no privity of contract between the mortgagee and lessee of mortgaged land. The mortgagee may treat a lessee holding under a lease from the mortgagor as a trespasser, and eject him; *but unless the tenant has attorned to him, he cannot distrain or bring an action for rent, as there is no relation of landlord and tenant between them.* A mortgagor cannot make a lease of the mortgaged premises which will be binding upon the mortgagee. * * * In order to create the relationship of landlord and tenant between the mortgagee and lessee there must be an attornment of the tenant or some action on his part which will operate as an attornment; * * *[3] (Emphasis added.)

In the instant action, there is no explanation as to the basis upon which Evershed demanded and accepted rent from Conley, if he were not his tenant. If Conley were his tenant, what were the terms of the tenancy?

A comprehensive opinion involving similar issues to those in the instant case is found In re O'Donnell,[4] where the court stated:

We are thus brought to a consideration of the effect of an attornment when made to title paramount. * * *

* * * Attornment may also mean the acknowledgment by a tenant that he holds under a new lord who claims by title paramount, and not by grant of the reversion or as privy to the reversioner. In such a situation, "the new tenancy thus constituted, though popularly spoken of as a continuing tenancy," is "in fact a new contract and a new demise." [Citations omitted.] Ratification of the old demise, at least in any proper sense, there obviously is none, for he who made the demise has not assumed to act for anyone except himself, and least of all for one whose claim is paramount and hostile. [Citations omitted.] It is possible, of course, to incorporate in the new demise, expressly or by implication, the provisions of the old one, including the term of its duration. * * *

If nothing more is shown than payment and receipt of rent, the result at common law is the creation either of a tenancy at will or at most of one from year to year. [Citation omitted.]

*The question remains whether payment and receipt are supplemented here by declarations and circumstances sufficient to justify a finding of the prolongation*

---

3. 3 Thompson on Real Property (1959 Replacement) § 1078, pp. 285–286.

4. 240 N.Y. 99, 147 N.E. 541, 543, 544 (1925).

*of the term in accordance with the first demise.* We shall assume in favor of the respondents that such declarations and circumstances may sometimes be sufficient, though there is no writing to be interpreted, and though the term is in excess of a year, the usual limit for oral leases. In so doing we pass the question by whether there is need, to avoid the operation of the statute of frauds, that the case be brought under some recognized head either of estoppel[5] or fraud, and of the equitable jurisdiction appropriate thereto. * * * (Emphasis added.)

The O'Donnell case considers the dominant factual issue to be resolved is whether there has been "a definitive election that the tenancy previously existing shall be kept alive until the end," or whether viewing the events in their totality there is discoverable "the clear and unequivocal tokens of an intention to accept an attornment effective for a term of years."

█ In the instant action, appellant has submitted facts which in effect indicate an attornment. These facts are sufficient to constitute a triable issue as to whether Conley's payment of rent and Evershed's receipt thereof are supplemented by declarations and circumstances sufficient to justify a finding of prolongation of the term in accordance with Conley's lease with Berry.

The summary judgment should be reversed and the case remanded for trial in accordance with this opinion.

TUCKETT, J. concurs.

HENRIOD, Justice (concurring):

I concur. The law of this case is not one of determining the rights of the parties, but simply to the effect that there was a genuine issue of fact that should be settled by an arbiter of the facts at a trial. Mr. Justice Ellett's dissent overlooks the purpose of the reversal in this case by discussing substantive rights before they have been established. I think the summary judgment route is that road that leads to a cul du sac because the fact issues cannot penetrate the barrier. The main opinion simply says there *is* an issue of fact that pierces the veil,—that's all,— and no title insurance company would sell a policy on the grounds that the main opinion has salted down res adjudicata-wise the substantial rights of the parties in this case. Not even Lloyds' of London would gamble on the rights, where the main opinion simply says "Let's establish

---

5. There is within the record a possible basis for invoking an estoppel; Evershed, with knowledge of the use of the property for business purposes, stood by silently and allowed Conley to expend sums in excess of $8,000 for improvements, including paving of the parking lot.

the facts at a trial in order to establish the correlative rights." The minute the seller gave a notice to "pay up *or* quit," and accepted and retained rental payments in response thereto, there was precipitated a genuine issue of fact not determinable, under the rules, by summary judgment.

ELLETT, Justice (dissenting):

I dissent. The first case cited in the main opinion (Geo. Benz & Sons v. Willar, 198 Minn. 311, 269 N.W. 840, 109 A.L.R. 443) held that foreclosure of a mortgage terminated the lease of defendants (who held as tenants under the mortgagor) and that "Defendants thereafter remaining in possession were trespassers, or, at best, tenants at will or at sufferance and could have been ejected." In the instant case if the defendant is a trespasser, he has no rights whatsoever; and if he is a tenant at will or at sufferance, his lease with his landlord (the conditional purchaser) is not to be converted into any instrument of validity binding on the true owner who has heretofore terminated any and all rights which the conditional purchaser may have had in the property. Until this defendant enters into some valid contract with the plaintiffs, the relationship continues to be that of trespasser, or, as said above, tenant at will or at sufferance.

In the contract of sale, Berry promised that he would not lease the property without the consent of the plaintiffs. He did lease to Conley without any consent ever being had from plaintiffs, either orally or in writing. This is but another reason why Conley has no standing to assert a five-year lease against the plaintiffs.

The main opinion cites 3 Thompson on Real Property (1959 Replacement) § 1078, pp. 285–286, but does not underscore the lines that seem important to me, to wit: "The mortgagee may treat a lessee holding under a lease from the mortgagor as a trespasser, and eject him; * * *" The fact that the mortgagee cannot distrain or bring an action for rent is immaterial.

The main opinion seems to indicate that by demanding payment of rent due, the plaintiffs recognized the existence of the long-term lease.

The general law is set forth in 36 Am. Jur., Mortgages, § 283· as follows:

A mortgagee entitled to the possession of the mortgaged premises may elect to recognize a lessee, under a lease made by the mortgagor subsequent to the mortgage, as his tenant. The question whether there has been a recognition by the mortgagee of the lessee as his tenant is one of fact for the jury on evidence of the conduct of the mortgagee. *The single act of demanding rent of the lessee is apparently not sufficient for that purpose; something further clearly indicative of an intention to establish the relation of landlord and tenant is*

*required.* Generally, the effect of the recognition when established is not to confirm the lease granted by the mortgagor, but to create a new tenancy from year to year between the mortgagee and the lessee. A special agreement would ordinarily be required to make valid and to effectuate the extension of a lease executed by the mortgagor, although a different rule might obtain under particular circumstances operating as an estoppel of the mortgagee from contesting the rights of the lessee under the lease. [Emphasis added.]

The main opinion also hints that there may be an estoppel by reason of the plaintiffs' allowing the defendant to cover the land with a thick coating of asphalt or other similar paving material. However, there can be no estoppel unless the plaintiffs did something to induce the defendant to expend money which he otherwise would not have done or unless they failed to speak up when they had a duty to speak. As was said in the case of Utah Savings and Loan Association v. Mecham, 12 Utah 2d 335, 366 P.2d 598, 15 A.L.R.3d 63:

> However, in order to establish an estoppel against a mortgagee, the lien claimant must show some concealment, misrepresentation, act, or declaration by the mortgagee upon which the lienholder properly relied and by which he was induced to act differently than he would otherwise have acted.

In the instant case, the plaintiffs had sold the land to one Berry and his wife, and the contract so far as the record reveals was in good standing at the time the ground was paved. The plaintiffs owed no duty to the defendant to tell him that in case Mr. Berry failed to make payments, the expenditure being made by the defendant might go for naught. In fact, it was none of plaintiffs' business unless the so-called improvement might be considered as damaging to the possible reversionary interests of plaintiffs. In such case the plaintiffs might be estopped to claim damages if they knew what was going on and failed to object thereto at the time. However, plaintiffs make no claim for any damages in that regard, and so there is no basis for thinking that any estoppel exists. Besides this, estoppel is a defense which must be set forth affirmatively in the pleadings in order to be availed of. Rule 8(c), U.R.C.P. The defense was not raised by the pleadings, and it is not proper for us to consider it here.

The defendant does not claim that he is a tenant at will of the plaintiffs, but he insists that his five-year lease with Berry is binding upon these plaintiffs. I think the trial court was correct in holding that the interest of the defendant was terminated when the interest of his landlord, Berry, was terminated, and under no theory of the law and the facts as set forth before the court in the motion for summary judgment

'could Conley's lease be foisted upon the plaintiffs.

In his affidavit Conley says that he was told "in effect" that his lease would be honored if he paid his rent. He does not say that he was told by the plaintiffs nor, in fact, by whom he was told. Even if he had been told by the plaintiffs, this at best would only make him a tenant at will.

I would affirm the judgment, with costs to the plaintiffs.

CROCKETT, C. J., concurs in the dissenting opinion of Mr. Justice ELLETT.