HARRIS–DUDLEY PLUMBING COMPANY, a Utah Corporation, Plaintiff and Respondent,

v.

PROFESSIONAL UNITED WORLD TRAVEL ASSOCIATION (WTA), INC., a Utah Corporation, Utah Oil Company (UTOCO), a corporation, Utah Sand and Gravel Products, a corporation, Salt Lake County, a Body Politic, State Tax Commission of the State of Utah, Ogden World Travel Association (WTA), Inc., a corporation, Floyd E. Benton, Defendants and Appellants.

No. 15035.

Supreme Court of Utah.

Feb. 15, 1979.

---

Ronald C. Barker, Salt Lake City, for defendants and appellants.

Macoy A. McMurray, Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Plaintiff Harris-Dudley Plumbing Company brought this action seeking foreclosure of a mechanic's lien and a personal judgment of $1,895.22 against defendants Professional United World Travel Association, Ogden World Travel Association, Utah Oil Company and Floyd E. Benton for plaintiff's installation of a water line on properties owned by the defendants. From an order providing for the foreclosure of the lien and sale of the subject property and granting a personal judgment for the above amount, the defendants appeal.

On August 4, 1969, defendant Benton, who was the president of each of the defendants, Professional United World Travel Association, Ogden World Travel Association and Utah Oil Company, contacted the plaintiff's president, John R. Dudley, regarding the installation of a water line. They met on the premises where the work was to be done. The trial court found that defendant Benton "pointed out exactly where he wanted the plumbing line to be located." The parties orally agreed that the job was to be done on the basis of the reasonable value of the work and materials furnished.

Pursuant to their agreement, the plaintiff installed the water line, which was located on one lot, No. 17, proceeded along a common boundary with and then crossed over onto another lot, No. 16. The latter lot, No. 16, was owned by Condominium Investors, of which Mr. Benton was also the president, and which latter lot was under

lease to Ogden World Travel Association. On November 16, 1969, after the work was completed, Mr. Dudley requested payment from defendant Benton who told him to bill Utah Cooperative Association, which was financing the project.

On November 26, 1969, Utah Cooperative Association issued a check for the $1,895.22 payable to Ogden World Travel Association and the plaintiff. The check was sent to defendant Benton who deposited it in the Ogden World Travel Association account, but did not forward any funds to the plaintiff. Thereafter, on January 20, 1970, the plaintiff recorded a notice of a lien on lot 17, but did not file one on lot 16.

Subsequently, on May 14, 1970, lot 17 was conveyed from Professional United World Travel Association to Utah Oil Company and lot 16 was acquired from Condominium Investors and Ogden World Travel Association by Utah Cooperative Association. However, the trial court found that *"at the time of the aforesaid contract* by Mr. Benton with Mr. Dudley . . ., *corporations of which Mr. Benton was president, owned or had under lease both tracts of land . . . ."*

In attacking the judgment of foreclosure and also the personal judgment against the defendants as recited above, the defendants contend (1) the court erred in awarding a personal judgment before the property was sold and before it could be determined whether a deficiency judgment was necessary; (2) the lien was void due to the plaintiff's failure to record a lis pendens on lot 16; and (3) no lien could attach to lot 17 because there were no authorized improvements made thereon.

The statutes material to this controversy are Section 38–1–3, U.C.A., 1953, which provides that:

. . . all persons performing any services or furnishing any materials used

in the . . . improvement to any premises in any manner . . . shall have a lien upon the property upon or concerning which they have rendered service, performed labor or furnished materials, for the value of the service rendered, labor performed of materials furnished . . . .

and Section 38–1–16 states as follows:

Every person whose claim is not satisfied as herein provided may have judgment docketed for the balance unpaid, and execution therefor against the party personally liable.

The purpose of the liens thus created by statute is to assist in the collection of laborers' and materialmens' claims and not to diminish in any way the claimant's rights to enforce the obligation of contracts, or any other remedy the claimant may have.[1] In harmony with the foregoing and to the same general purpose, both the foreclosure of such a lien and a judgment on the contract may be entered for the amount necessary to discharge the debt as proven.[2] Consequently, the court committed no error in giving judgment for the full amount of the debt as contracted for. In that regard, it should of course be observed that while all possible avenues of relief may be pursued simultaneously, there can be but one satisfaction of the debt.[3]

We similarly find the defendant's argument that the plaintiff's lien is void because the notice was not filed on both lots to be without merit. It is true as defendants argue that Section 38–1–11, U.C.A., 1953, requires that a notice of lis pendens be filed within one year or the lien is void. But defendants ignore the exception contained in that section that the lien would not be void as to "persons who have been made parties to the action and persons having actual knowledge of the commencement of the action . . . ."

1. 53 Am.Jur.2d, Mechanic's Liens, Sections 340, 416; *Utah Savings & Loan Ass'n v. Mecham*, 12 Utah 2d 335, 366 P.2d 598 (1961); *Costanzo v. Stewart*, 9 Ariz.App. 430, 453 P.2d 526 (1969).

2. 53 Am.Jur.2d, Mechanic's Liens, Section 417; 57 C.J.S. Mechanic's Liens § 328; *State v. Breen*, 41 Nev. 516, 173 P. 555 (1918); *Groff v. Stringer*, 82 N.M. 180, 477 P.2d 814 (1970).

3. 57 C.J.S. Mechanic's Liens, § 266.

589

Defendants' assertions that the transferee of lot 17, Utah Oil Company, was not a party to the action and would not be bound by the judgment are contrary to the facts shown in the record. The trial court expressly found that that company was present and represented by counsel during the trial. Furthermore, as president of that company, defendant Benton's knowledge of the commencement of that proceeding is imputed to it.[4]

Defendants' final contention is that the lien should not attach to lot 17 because under the original instructions to Mr. Dudley (on plaintiff's behalf), there was no direction to make any improvements thereon.

In so urging, the defendants rely on Section 38–1–3 which provides for a lien only when improvements are contracted for "at the instance of the owner or of any other person acting by his authority as agent . . . ."

Under the circumstances shown here, that argument is not persuasive. As above indicated, the trial court found that the defendant Benton, who was president of the corporations involved with ownership of these lots at all times material herein expressly showed Mr. Dudley where the line was to be installed. Contrary to defendants' assertion that the plumbing work merely encroached upon lot 17, but did not constitute any improvement on it, the court found that the development of both lots was anticipated by their owners. Thus, the placement of the water line, which made it accessible to both lots, would constitute an improvement within the meaning of Section 38–1–3.

For the foregoing reasons, the decision of the trial court is affirmed. Costs to plaintiff.

MAUGHAN, WILKINS and HALL, JJ., concur.

4. 19 Am.Jur.2d Corporations, Section 1263; Sons of Norway v. Boomer, 10 Wash.App. 618, 519 P.2d 28 (1974); Lowe v. April Industries, Inc., Utah, 531 P.2d 1297 (1974).