## S98A1297. RHODES v. ANCHOR RODE CONDOMINIUM HOMEOWNER'S ASSOCIATION, INC. et al.
### (508 SE2d 648)

FLETCHER, Presiding Justice.

A portion of the septic system for the Anchor Rode Condominium Homeowner's Association, Inc. lies on a 1.74 acre tract of land owned by Blaine and Sally E. Rhodes. Anchor Rode sought a judgment against Blaine Rhodes declaring the validity of its sewage system disposal easement and a permanent injunction enjoining Rhodes from interfering with the use of the easement. Rhodes counter-claimed for a judgment declaring that the Rhodes' property is not burdened with the easement and a permanent injunction preventing Anchor Rode from discharging sewage on the Rhodes' property. The trial court granted the declaratory and injunctive relief sought by Anchor Rode and denied the relief sought by Rhodes. On appeal, the controlling issue is whether the foreclosure of a security deed predating the easement extinguished Anchor Rode's easement. Because the security deed grantees did not join in granting the easement or other-wise subordinate their rights in the servient property, the foreclosure extinguished the easement and we reverse.

In 1980, Almont Lindsey purchased the property at issue from Ray and Gladys Hagberg and Lindsey executed a deed to secure debt in favor of the Hagbergs. Lindsey subsequently conveyed the property to Windjammer Lodge, Inc., subject to the Hagbergs' deed to secure debt. Windjammer Lodge granted a perpetual nonexclusive easement for the installation and maintenance of a septic tank sewage disposal system on the property to serve Anchor Rode Condominium. The easement was recorded in 1987 and the rights have descended to Anchor Rode. The Hagbergs, however, did not join in the grant of the easement, subordinate their security deed to the easement, or release the servient property from the security deed. When the secured indebtedness was not paid, the Hagbergs' fore-closed their security deed and conveyed the property to Blaine Rhodes and Sally E. Rhodes, the purchasers at the foreclosure sale, by deed under power in 1991.

1. A deed to secure debt (security deed) is peculiar to Georgia law.[1] It conveys legal title in the real property to the grantee with the grantor retaining an equitable estate, which ordinarily entitles the grantor and his assigns to possession so long as there is no default under the terms of the deed.[2] Because legal title remains in the

---

[1] *Shumate v. McLendon*, 120 Ga. 396 (3) (48 SE 10) (1904); *In re Lookout Mt. Hotel Co.*, 50 F.2d 421, 424 (N.D. Ga.), *rev'd on other grounds*, 53 F.2d 463 (5th Cir. 1931), *cert. denied*, 285 U.S. 539 (52 SC 312, 76 LE2d 932) (1932).

[2] OCGA § 44-14-60; *Citizens Bank v. Taylor*, 155 Ga. 416 (1) (117 SE 247) (1923). See

grantee until satisfaction of those terms, all subsequent conveyances of the real property remain subject to the security deed,[3] unless the grantee releases the property by conveyance or contractually subordinates his rights.

Anchor Rode claims its easement rights through express grant from Windjammer Lodge, successor-in-title to Lindsey, the grantor of the security deed. However, the easement grant was conveyed subsequent to the delivery and recording of the security deed and the Hagbergs, the grantees of the security deed, did not join in the easement grant, subordinate their rights, or otherwise release the servient property. Therefore, the easement remained subject to the security deed.

2. A valid foreclosure of a security deed not only vests legal title in the purchaser, it also divests all of the grantor's rights in the property as well as the rights of those claiming through the grantor that are subject to the security deed.[4] The validity of the foreclosure is not at issue and, since the easement was subject to the security deed, Anchor Rode's easement was extinguished by the foreclosure[5] and the trial court erred in holding otherwise. That the Rhodes had actual or constructive notice of the easement when they purchased the property at the foreclosure sale is of no consequence, as Anchor Rode concedes that its claims are not founded on prescription. Because Anchor Rode has no easement rights, the trial court erred in granting a permanent injunction.

3. As a result of our holding in division 2, the Rhodes' property is not burdened with the sewage disposal system easement. Therefore, Rhodes is entitled to the declaratory relief sought in his counterclaim and, on remand, his claim for injunctive relief must be reconsidered in further proceedings.

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED NOVEMBER 9, 1998.

*Stewart, Melvin & Frost, Frank Armstrong III,* for appellant.

---

generally George A. Pindar and Georgine S. Pindar, *Georgia Real Estate Law and Proc.,* §§ 21-13, 21-13.1 (4th ed. 1993).

[3] *Chason v. O'Neal,* 158 Ga. 725 (124 SE 519) (1924); *Cook v. Georgia Fertilizer & Oil Co.,* 154 Ga. 41 (2) (113 SE 145) (1922).

[4] *Cummings v. Johnson,* 218 Ga. 559 (3) (129 SE2d 762) (1963); see generally Pindar, *Georgia Real Estate Law and Proc.* at § 21-89.

[5] *Massey Assoc. Ltd. v. Whitehorse Inns, Inc.,* 265 Ga. 320, 321 (454 SE2d 513) (1995) (easement is lost by foreclosure of security deed where security deed was executed prior to creation of easement).

*Cary D. Cox, Sorgen & Schindelar, Lawrence S. Sorgen,* for appellees.