

# FILED

**December 17, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| RICHARD D. MINTON and | ) | |
| KATHLEEN MINTON, | ) | |
| | ) | |
| Plaintiffs/Appellees, | ) | Appeal No. |
| | ) | M1998-00491-COA-R3-CV |
| v. | ) | |
| | ) | Davidson Chancery |
| WILLIAM R. LONG, et al, | ) | No. 97-1985-III |
| | ) | |
| Defendants/Appellants. | ) | |

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE DAVIDSON COUNTY CHANCERY COURT

AT  NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

C. BENNETT HARRISON, JR.
Cornelius & Collins
Nashville City Center, Suite 2700
511 Union Street
P. O. Box 190695
Nashville, Tennessee 37219
ATTORNEY FOR PLAINTIFFS/APPELLEES

WINSTON S. EVANS
Evans, Jones & Reynolds
1810 First Union Tower
150 Fourth Avenue, North
Nashville, Tennessee 37219-2424
    ATTORNEY FOR DEFENDANTS/APPELLANTS


REVERSED AND REMANDED


WILLIAM B. CAIN, JUDGE

O P I N I O N

This case involves a parking easement over and upon a piece of commercial property located in Nashville. The property with the easement, the servient estate, was the subject of a mortgage foreclosure sale. We primarily consider two issues here: first, whether the easement continued to exist after the foreclosure and, second, whether the post-foreclosure purchasers of the servient estate are now estopped by deed from asserting that the foreclosure extinguished the easement.

The trial court granted summary judgment to the owners of the property which benefits from the easement, the dominant estate owners, holding as a matter of law that the foreclosure sale did not extinguish the parking easement. The court also held that since the trustee's deed, subsequent to foreclosure, recognized the existence of the parking easement as did the post-foreclosure deeds of all subsequent grantees of the servient estate, the defendant and present owner of the servient estate was estopped by deed to deny the continued existence of the easement. We reverse the trial court's grant of summary judgment as we find that the foreclosure sale did terminate the Parking and Access Easement. Furthermore, we find that this case must be remanded for a determination of the factual issues including the issue of what intent was evinced by the transfer of the deed of the servient estate subject to the easement.

I.      FACTS

Prior to October 8, 1984, both pieces of adjacent property involved in this case, a dominant and a servient tract of land, were owned by Tropics Properties, a Tennessee general partnership. On October 8, 1984, Tropics Properties sold what was to become the servient estate to Lon F. Raby, Trustee. Contemporaneous with this sale, Raby granted a written and recorded Parking and Access Easement to Tropics Properties. By this instrument, Raby granted to Tropics Properties a nonexclusive easement for parking and access on the property contemporaneously transferred to him by Tropics Properties, said easement being in favor of the adjacent properties still retained by Tropics Properties and upon which it was then operating the Steeple Chase restaurant. This Parking and Access Easement contained the following provision:

> All parking and access rights granted by this instrument shall at all times and at any given time be subordinate to any existing first mortgage(s) on either or both properties affected h[e]reby, whether such mortgage(s) now exist or may be hereafter imposed; and such subordination shall occur and be operative and effective by the fact of the existence of such mortgage(s) of public record, it being the intent hereof that no subordination agreement or acknowledgment of subordinate status shall be necessary in order to effect such subordinate status, and that the release and satisfaction of a first mortgage or first mortgages, followed at any interval by the creation of a new first mortgage or first mortgages shall automatically confer priority on the new mortgage(s).

On February 28, 1985, Lon F. Raby, Trustee, executed a deed of trust in favor of Third National Bank conveying the servient estate in trust to J. M. Grissim, Trustee, to secure a promissory note in the amount of $3,750,000.00. This trust deed provided in part that "[b]orrower covenants that borrower is lawfully seized of said property and that the same is free and clear of all taxes, liens and encumbrances whatsoever, except as set out in Exhibit "B" attached hereto and incorporated herein by reference." Exhibit "B" provides in pertinent part as follows: "9. Parking and access easement of record in book 6399, page 533, said Register's Office (subordinate to the deed of trust to which this exhibit is attached)."

Raby defaulted and Third National Bank foreclosed on the servient estate.

At the October 5, 1990 foreclosure sale, Third National Bank was the highest bidder at $2,949,263.00. On that same date, W. Fred Williams, Successor Trustee, conveyed to Third National Bank by deed the servient estate and other property encumbered by the trust deed. The deed from the trustee to the bank provided that the sale was subject to certain easements, restrictions, and liens, including the following: "10. Parking and access easement of record in book 6399, page 533, said Register's Office."

On September 18, 1991, the Steeple Chase restaurant having closed, Tropics Properties leased the dominant estate to plaintiffs in this action, Richard and Kathleen Minton, who operated thereon Illusions Salon and Day Spa, a beauty and health care salon. This lease agreement specifically provided that the leased premises included parking rights as set forth in the Parking and Access Easement previously executed by Raby, Trustee, on October 8, 1984. This lease also gave the Mintons the option to purchase the dominant estate upon certain terms and conditions.

On June 22, 1993, Third National Bank sold the servient estate to Belle Meade Galleria I, a limited partnership. The deed of conveyance from Third National Bank to Belle Meade Galleria I was made subject to the Parking and Access Easement favoring the dominant estate.

On January 27, 1994, the Mintons exercised their option and purchased the dominant estate from Tropics Properties by deed specifically providing that the conveyance was made: "Together with and subject to all of grantors rights in and to the nonexclusive parking and access easement of record in book 6399, page 533, said Register's Office, subject to the terms and conditions therein, including but not limited to automatic subordination of rights to any recorded first mortgage(s)."

By deed dated September 30, 1996, Belle Meade Galleria I sold the servient estate, by special warranty deed, to the defendant in this case, William R. Long "

subject to the following: ...6. Parking and access easement of record in book 6399, page 533, said Register's Office." On or about October 22, 1996, Long caused to be constructed a fence between the dominant and servient estates effectively preventing the Mintons from exercising any rights under the Parking and Access Easement. On June 13, 1997, the Mintons filed suit against Long seeking a declaration by the court of the validity of the Parking and Access Easement and a mandatory injunction for removal of the fence.

On August 25, 1997, Belle Meade Galleria I, by special warranty deed of correction, reconveyed the servient estate to Long, deleting any reference to the Parking and Access Easement in favor of the Minton property. On September 2, 1997, Long answered the complaint and by counter-claim joined W. Fred Williams, Trustee and SunTrust Bank of Tennessee as successor by merger of Third National Bank, seeking to quiet title to the servient estate and reform all deeds in Long's chain of title so as to delete all exceptions and reservations concerning the Parking and Access Easement.

The trial court granted summary judgment to plaintiffs holding that the Parking and Access Easement survived the foreclosure sale of the servient estate and further that the defendants were estopped by deed to deny the continued existence of the Parking and Access Easement, the trial court granted summary judgment to plaintiffs. The trial court further *sua sponte* dismissed the counter claim of Long against the Mintons, the bank and the trustee seeking to reform the deeds in the chain of title to the servient estate.

II.     ISSUES

In his first issue, Long challenges the trial court's holding that the Parking and Access Easement survived the foreclosure sale. There is little doubt that in cases where a properly recorded deed of trust predates the establishment of an easement or encumbrance, foreclosure and sale under the deed of trust terminates such easement or encumbrance. In *Parker, Flenniken & Claiborne v. Thacker*, 15

Tenn. App. 553 (1932), it was held that foreclosure and sale of a first mortgage effectively cut off a subsequent mortgage and the purchaser of the property at foreclosure sale took it free and clear of the encumbrance of a second mortgage. In the same context this court has held that "[i]t is in the nature of the infirmity of a junior mortgage or lien that it may be extinguished in the enforcement of a superior mortgage or lien." *Third Nat'l Bank v. McCord*, 688 S.W.2d 446, 450 (Tenn. App. 1985).

That the same rule applies when the post-mortgage encumbrance is an easement appears to be settled.

> The only dispute in this case is over the easement granted [the defendant] over the second tract. The Government correctly states that the issue before the Court is whether an easement created over lands subject to a mortgage has priority or survives the foreclosure of the mortgage by the mortgagee. The government cites *Kling v. Ghilarducci*, 3 Ill.2d 454, 121 N.E.2d 752 (1954) for the proposition that an easement created subsequent to the execution of a mortgage is eliminated by foreclosure of the mortgage.
>
> The holding in *Kling* was cited with approval in *Bush v. Duff*, 754 P.2d 159 (Wyo. 1988). The *Bush* court faced a similar situation involving the granting of a mortgage followed by the establishment of a way of necessity over a servient estate previously mortgaged. Even though the court recognized the existence of a common-law way of necessity to the owner of a landlocked tract, the court concluded that the foreclosure of the mortgage extinguished the way of necessity.
>
> . . .
>
> The government is correct in stating that [the defendant's] easement is extinguished upon foreclosure of the subject mortgage.

*United States v. Roberts*, 788 F.Supp. 555, 556-57 (S.D. Fla. 1991).

Particularly enlightening is the following discussion by the Court of Appeals of Utah:

> A mortgage that antedates a lease is a superior security interest to that lease. "If the sale of the landlord's interest is forced by one having a paramount title to that of the tenant, such as a mortgagee whose interest existed at the time the lease was made, the tenant's interest will be defeated by the sale." *Restatement (Second) of*

*Property* § 15.1 (1981).

> Whether the lease addresses the matter or not, the estate for years cannot last longer than the estate from which it is carved. Thus a term of years ends whenever the landlord's estate ends . . . . [T]he subordinate tenant, while losing the right to possession in favor of the paramount titleholder, may nevertheless have a cause of action against his or her landlord for breach.

2 Richard R. Powell, *Powell on Real Property* § 16.03(7)(d) at 16-85 (1996). *See also Evershed v. Berry*, 20 Utah 2d 203, 205-6, 436 P.2d 438, 439-40 (1968) ("The rights and liabilities of the parties under a lease made after the mortgage are very different from those which exist when the mortgage is made after the lease . . . . A mortgagor cannot make a lease . . . which will be binding upon the mortgagee.") (citations omitted); 4 *Thompson on Property* § 39.06(b)(1) (David A. Thomas ed. 1994) ("As with other forms of tenancy, the tenant's rights under the lease no longer exist if the landlord's estate comes to an end in any way other than a voluntary transfer to a successor . . . . [A] mortgage foreclosure in which the landlord's interest is involuntarily relinquished to satisfy a debt obligation which was secured by the landlord's property prior to creation of the lease results in termination of the tenant's interest in the property").

*Consolidated Realty Group v. Sizzling Platter, Inc.*, 930 P.2d 268, 272 (Utah Ct. App. 1996).

In this case, the grant by Raby of the Parking and Access Easement over the servient estate predates the mortgage of the servient estate to Third National Bank. The instrument granting the Parking and Access Easement contains a provision automatically subordinating all parking and access rights to any first mortgage, either existing or thereafter imposed. The deed of trust by Raby to Third National Bank provides that the property conveyed in trust (the servient estate) is encumbered by the Parking and Access Easement but shows such encumbrance with the following caveat: "9. Parking and Access Easement of record in book 6399 page 533, said Register's Office (subordinate to the deed of trust to which this exhibit is attached)." (emphasis added).

The effect of such a subordinating provision is addressed by the Court of

Appeals of California in *Dover Mobile Estates v. Fiber Form Products, Inc.*, 270 Cal.Rptr. 183 (Cal. Ct. App. 1990). In the *Dover* case, Fiber Form was a tenant of Old Town Properties, Inc. under a five year lease beginning in 1985. This lease contained the following subordination clause:

> Subordination of Lease to Loans. Tenant agrees that this Lease shall be subordinate to any mortgages or deeds of trust in the nature of mortgages that may hereafter be placed upon the premises, to any and all advances made or to be made under them, to the interest on all obligations secured by them, and to all renewals, replacements, and extensions of them; provided, that if any mortgage or beneficiary elects to have this Lease superior to its mortgage or deed of trust and gives notice of its election to Tenant, then this Lease shall be superior to the lien of any such mortgage or deed of trust and all renewals, replacements and extensions thereof, whether this Lease is dated or recorded before or after the mortgage or deed of trust.

*Id.* at 184 n. 1. Subsequent to the Fiber Form Lease, Old Town encumbered the property by a second deed of trust to Saratoga Savings and Loan Association. Old Town defaulted and at the foreclosure sale, the property was purchased by the predecessor in interest to Dover Mobile Estates. Fiber Form, the tenant, suffered a downturn in business and advised Dover that the foreclosure sale had extinguished their lease and that thereafter Fiber Form was only a month to month tenant. Fiber Form vacated the premises and Dover sued to enforce the lease.

Holding that the title conveyed by a trustee's deed relates back to the date when the deed of trust was executed and that the trustee's deed therefore passes the title held by the trustee at the time of such execution, the court then addressed the subordination provisions:

> A lease may also be deemed subordinate by virtue of a subordination agreement. "Subordination agreements are often used to adjust the priorities between commercial tenants and the mortgagee of the real estate, ... Absent such an adjustment, priorities will be governed by the recording acts and related common law principles."
>
> A lease which is subordinate to the deed of trust is extinguished by the foreclosure sale. A foreclosure proceeding destroys a lease

junior to the deed of trust, as well as the lessee's rights and obligations under the lease. As stated in section 15.1 of the Restatement Second of Property, Landlord and Tenant (1977), "[i]f the sale of the landlord's interest is forced by one having a paramount title to that of the tenant, such as a mortgagee whose interest existed at the time the lease was made, the tenant's interest will be defeated by the sale."

In this case the lease itself provides that it is subordinate to the deed of trust. Section 21.1 provides, "[t]enant agrees that this Lease shall be subordinate to any mortgages or deeds of trust ... that may hereafter be placed upon the premises, ..." Although section 21.1 does give the mortgagee or beneficiary the option to elect "to have this Lease superior to its mortgage or deed of trust ...", that option was never exercised. Accordingly, it is clear that the lease is subordinate to the deed of trust and was therefore extinguished by the trustee's sale.

*Dover*, 270 Cal.Rptr. at 185-86 (citations omitted).

In the instant case, the Parking and Access Easement encumbering the servient estate contained a subordination agreement much akin to that contained in the *Dover* lease. The deed of trust by Raby to Third National Bank contained a specific provision that the Parking and Access Easement was subordinate to the deed of trust. Upon default by Raby, this deed of trust was foreclosed and thus sale at foreclosure by the trustee terminated the Parking and Access Easement. We therefore find that the trial court erred in granting summary judgment to the Mintons.

Turning to the next issue, we note that the cross-motion for summary judgment by Long would be well taken were it not for the fact that the trustee conveyed the property to Third National Bank as purchaser at the foreclosure sale by a deed purporting to make the servient estate subject to rather than free of the Parking and Access Easement. In granting summary judgment to the Mintons, the trial court held as follows:

While the foreclosure sale ordinarily would have extinguished the easement because the easement, when created, was made subordinate to the first mortgage, the foreclosure sale in this case

did not extinguish the easement. The deed conveying the servient tenement in connection with the foreclosure sale specifically recited that the property was subject to the easement. That recitation is a binding expression of intent as to the parameters of the servient tenement.

Dr. Long is estopped by the deeds in his chain of title to deny the existence of the easement. The plaintiff's predecessor was conveyed the easement by a special warranty deed. The easement deed is referenced in Dr. Long's chain of title as well as the quitclaim deed the plaintiff's received from their lessor. The plaintiffs, then, are not strangers to the chain of title as to the easement.

The trial court errs in holding as a matter of law that the recitation in the trustee's deed to Third National Bank is conclusive as to intent. The sale at foreclosure terminated the Parking and Access Easement. The record is devoid of any evidence as to why the trustee included in his deed the language purporting to make the servient estate still subject to the easement. The record is likewise devoid of any evidence as to why Third National Bank, predecessor in interest of Long and purchaser at the foreclosure sale, accepted the trustee's deed which purported to convey less than the full fee simple estate held by the trustee. Whether this involves a mistake as asserted by Long or was an intentional act as asserted by the Mintons and found by the trial court involves issues of fact and not issues of law.

Long asserts that none of the reservations as to this easement contained in his chain of title, including the deed from the trustee to Third National Bank, can create any rights in the Mintons since they were strangers to all of the transactions in Long's chain of title. Long relies on *Pitman v. Sweeney*, 661 P.2d 153 (Wash. Ct. App. 1983), which is based on the much disputed common law rule that a reservation or exception in a deed cannot create rights in strangers to the instrument. *See* W.W. Allen, Annotation, *Reservation or Exception in Deed in Favor of Stranger,* 88 A.L.R.2d 1199 (1963). The common law rule is well articulated by the Supreme Court of Wyoming:

"No interest or estate in land may be created in favor of the stranger to the title by means of a reservation or exception in

the conveyance thereof." "...[I]n a deed neither a reservation nor an exception in favor of a stranger to the instrument can, by force of ordinary words of exception or reservation, create in the stranger any title, right or interest in or respecting the land conveyed."

*Simpson v. Kistler Inv. Co.*, 713 P.2d 751, 754 (Wyo. 1986) (citations omitted).

In abandoning prior cases which had supported the common law rule, the Wyoming Supreme Court applied the rule that the intention of the grantor should prevail relying on the rationale of a law review article:

After a comprehensive review of the case law then existent, the author of the Oklahoma law journal article in 1953 concluded:
"Numerically speaking, where the interest involved amounts to an estate in land, the cases which hold the reservation operative far outweigh those which refuse to give it operative effect. This is the quantitative analysis. But what about the comparative logic of the two rules–the qualitative analysis? As was intimated earlier, the considerations which originally gave birth to the common-law rule, particularly those of public policy, are no longer persuasive. The common-law rule was founded on the major premise that it was more desirable from society's standpoint to have uniformity in its deeds of conveyance than it was to give effect to an individual grantor's intention. The 'Rule of Intention,' which is the guiding light for our modern courts in interpreting deeds, is founded on the converse of this major premise." ...

"That a rule so incongruous with our modern social and legal philosophy has survived in even a modified form is in itself something of a mystery. Certainly any rule which can only operate to defeat a grantor's intention is undesirable and should be discarded unless some overriding public policy requires its retention. It is difficult to perceive any overriding public policy to support the common-law rule because, as pointed out earlier, the rule condemns only the method of transferring title rather than the transfer itself. ... It is submitted that the common-law rule is an oppressive thorn which has ceased to justify its existence."

*Simpson*, 713 P.2d at 759.

Clearly, the modern trend is toward abandonment of the common law rule.

*See, e.g., Willard v. First Church of Christ, Scientist, Pacifica*, 498 P.2d 987 (Cal. 1972); *Blair v. City of Pikeville*, 384 S.W.2d 65 (Ky. 1964); *Townsend v. Cable*, 378 S.W.2d 806 (Ky. 1964); *Holland v. Holland*, 509 S.W.2d 91 (Mo. 1974). Long before this modern trend, Tennessee had declined to apply the "stranger to the deed" rule. In 1926, the court held that "[t]he courts have most wisely abandoned technical rules in the construction of conveyances in this state, and look to the intention of the instrument alone for their guide; that intention to be arrived at from the language of the instrument read in the light of the surrounding circumstances." *Dalton v. Eller*, 153 Tenn. 418, 423, 284 S.W. 68, 70 (1926).

The rationale for adhering to the common law rule has been articulated by a New York court as follows:

> The long-accepted rule in this State holds that a deed with a reservation or exception by the grantor in favor of a third party, a so-called "stranger to the deed", does not create a valid interest in favor of that third party. Plaintiff invites us to abandon this rule and adopt the minority view which would recognize an interest reserved or excepted in favor of a stranger to the deed, if such was the clearly discernible intent of the grantor.

> Although application of the stranger-to-the-deed rule may, at times, frustrate a grantor's intent, any such frustration can readily be avoided by the direct conveyance of an easement of record from the grantor to the third party. The overriding considerations of the "public policy favoring certainty in title to real property, both to protect bona fide purchasers and to avoid conflicts of ownership, which may engender needless litigation," persuade us to decline to depart from our settled rule. We have previously noted that in this area of law, "where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a ' correct' rule of law." Consequently, we hold here that any right-of-way reserved to plaintiff's predecessor-in-interest in the defendant's deed was ineffective to create an express easement in plaintiff's favor.

*Estate of Thomson v. Wade,* 509 N.E.2d 309 (N.Y. 1987) (citations omitted).

In a case analogous to the case at bar, the Supreme Court of Alaska, never

having recognized the common law rule, affirmatively repudiated it. In *Aszmus v. Nelson*, 743 P.2d 377 (Alaska 1987), both parties traced their title to non-adjacent portions of government lot 32 to one Charles Swoboda. Nelson owned the northeast corner of lot 32 and Aszmus owned the southeast part of the same lot. Nelson acquired his property in 1965 and Aszmus acquired his property in 1968. Nelson was using an access route called Swoboda Avenue, which ran along the east edge of lot 32 and provided occupants of the southern portion of the lot with access to a road on the north. Nelson blocked the road and Aszmus sued asserting that the original deed, executed by Swoboda's estate to Nelson's predecessor in title, created an easement over Nelson's land for their benefit. This deed had conveyed the Nelson property "subject to" among other encumbrances "a fifteen feet [sic] easement for an access roadway along the east boundary line of said Lot Thirty-two (32)." *Id.* at 378. Subsequent deeds in Nelson's chain of title provided that the property was sold subject to easements of record.

Nelson moved for summary judgment asserting that the "subject to" language of the Swoboda deed did not contain words of grant and so was ineffective to create an easement. The trial court granted summary judgment to Nelson and Aszmus appealed. The Supreme Court of Alaska reversed holding that the intent of the Swoboda estate in its conveyance to Nelson's predecessor in title presented unresolved issues of material fact precluding summary judgment. The court reasoned as follows:

> Nelson's argument is based upon the common law rule that a reservation or exception in a deed cannot create rights in third parties. . . .
> Since a stranger to the deed had no interest in the property conveyed, common law decreed that he could have no interest to be excepted from the grant, and none from which a reservation could be carved. *Willard v. First Church of Christ, Scientist*, 7 Cal.3d 473, 102 Cal.Rptr. 739, 741, 498 P.2d 987, 989 (1972); *see* 88 A.L.R.2d at 1202. "While a reservation could theoretically vest an interest in a third party, the early common law courts vigorously rejected this possibility, apparently because they mistrusted and wished to limit conveyance by deed as a substitute for livery by seisin." *Willard*, 102 Cal.Rptr. at 741, 498 P.2d at 989. The

*Willard* court termed the rule's foundation "an inapposite feudal schackle;" it found the rule in conflict with the goal of effecting the grantor's intent, and it asserted that the rule produced an inequitable result because grantees paid less for encumbered property. *Id.* Accordingly, the court rejected the rule. *Id.*, 102 Cal.Rptr. at 743, 498 P.2d at 991.

The New York Court of Appeals recently upheld the rule on the grounds that the rule protects bona fide purchasers and avoids conflicts of ownership. *Estate of Thomson v. Wade*, 69 N.Y.2d 570, 516 N.Y.S.2d 614, 509 N.E.2d 309 (1987). The court stated that, in the area of property law, "'stability and adherence to precedent are generally more important than a better or even a ' correct' rule of law . . . .'" *Id.*, 516 N.Y.S.2d at 615, 509 N.E.2d at 310. We believe the view expressed by the California court in *Willard* represents the preferred position and therefore join the other jurisdictions which have similarly rejected the rule. The rule clearly conflicts with our general view that a deed should be construed to effect the intent of the grantor. We find the justification for the rule articulated by the New York court unpersuasive. The rule has never been part of our case law and we perceive no policy reason for adopting it now.

Therefore, even if the Aszmuses acquired their property (or it was otherwise separated from the Swoboda property) before the Swoboda deed was executed, the Swoboda deed may have effectively created an easement across the Nelson lot for the benefit of the Aszmuses' lot.

*Aszmus v. Nelson*, 743 P.2d 377, 379-380 (Alaska 1987) (citations omitted).

Following *Dalton v. Eller*, 153 Tenn. 418, 284 S.W. 68 (1926), and the cases disavowing the common law rule, we hold, like *Aszmus v. Nelson* held, that what the trustee intended in conveyance to Third National Bank and what Third National Bank intended in accepting the trustee's deed and conveying the property to Long's predecessors in title are unresolved issues of fact that cannot be determined on summary judgment.

Having determined that a grantor may, without words of grant, vest rights in a third party stranger to the deed, the remainder of this case turns on issues of fact. Unquestionably, the trustee executed and delivered and Third National Bank

accepted a deed making what is now the Long property servient to the Parking and Access Easement of record in book 6399 page 533 of the Register's Office of Davidson County. Did the parties to this deed intend thereby to reimpose on the servient estate the Parking and Access Easement in favor of the dominant estate? Conversely, was the inclusion of the language recognizing the easement a mistake on the part of the trustee and the bank as asserted by Long? Did the bank acknowledge and agree to the continued existent of the easement? Did the Mintons rely upon the purported lease of the parking easement by Tropic Properties? Did the Mintons rely upon the conveyance of the parking easement from Tropic Properties? What was the effect of the bank continuing to allow the Mintons the use of the easement prior to its conveyance of the property to Belle Meade Galleria? Why did the bank recognize the purported easement in its conveyance to Belle Meade Galleria? Was alleged reliance by the Mintons on recorded instruments justified? All of the foregoing questions involve factual determinations that can not be determined on summary judgment under principles set forth in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), and *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975).

For the same reasons, estoppel by deed can not be determined on summary judgment in this case: "Before a party can claim an estoppel, there must be on the part of the claiming party; (a) lack of knowledge without fault of the true facts, (b) reliance upon the untrue facts, and (c) action based on the untrue statement or misrepresentation." *Smith v. Sovran Bank Cent. S.*, 792 S.W.2d 928 (Tenn. App. 1990). It can not be said that the Mintons have established knowledge without fault, reliance or action when this record is considered in the light most favorable to Long as must be done on summary judgment motion. *See Burgess v. Harley*, 934 S.W.2d 58 (Tenn. App. 1996).

Appellant asserts that estoppel by deed can not be asserted by the Mintons as they were strangers to the transactions involved in the trustee's deed to the bank, the deed from the bank to Belle Meade Galleria, and the deed from Belle Meade Galleria to Dr. Long. The Mintons are not, however, strangers to the trustee's deed

to the bank but rather the beneficiary of the Parking and Access Easement reserved therein, at least at the summary judgment stage. This too involves questions of fact.

Long next asserts that while the law suit was pending, Belle Meade Galleria delivered to him a deed of correction removing the parking easement exception. This exception is not a property right vested in Belle Meade Galleria but rather on its face an encumbrance upon the property in favor of the dominant estate. The deed of correction thus accomplishes nothing that affects either the Mintons or Long.

Finally, Long asserts that the trial court erred in dismissing *sua sponte* his counter-claim seeking to reform the trustee's deed and to quiet his title to the Parking and Access Easement. Had the trial judge been correct in granting summary judgment to the Mintons on the basis that the foreclosure sale did not terminate the easement and that the intent of the trustee in the deed to Third National Bank was to transfer the property subject to the easement as a matter of law, then it would have logically followed that the dismissal of the counter-claim, whether *sua sponte* or otherwise, was also a correct action. Since, however, we hold that the foreclosure sale terminated the easement and that the intent of the trustee in the conveyance of the property to the bank involves questions of fact, the dismissal of the counter-claim is error. As a remote grantee of the trustee and the bank, Long is in privity of estate with both and has standing to sue for reformation of the trustee's deed. *Jackson v. Thompson*, 166 Tenn. 174, 61 S.W.2d 470 (1932); *Modica v. Combs,* 249 S.W. 567 (Ark. 1923); 66 Am.Jur.2d *Reformation of Instruments*, § 61 (1973).

Reformation of a deed for mutual mistake is an action in equity and will not lie if it affects intervening rights of third persons who actually and justifiably rely upon recorded instruments. *M.R. Bldg. Corp. v. Bayou Utilities, Inc.*, 637 S.2d 614 (La. Ct. App. 1994). Whether or not the Mintons actually and justifiably relied on instruments of record in the Register's Office of Davidson County involves questions of fact.

III.    CONCLUSION

For the following reasons, we hold as follows:

1.  That the trial court erred in granting summary judgment to the Mintons on the basis that the foreclosure sale did not terminate the Parking and Access Easement.  In fact, this easement was terminated by the sale at foreclosure.

2.  The intent of the trustee in delivering and the intent of Third National Bank in accepting the deed to the servient estate subject to rather than free of the easement is not established as a matter of law but is a question of fact for the trier of fact.

3.  The intent of Third National Bank in its deed of the property to Belle Meade Galleria is a question of fact.

4.  The question of estoppel by deed is not established as a matter of law but must be determined on the facts developed    at trial.

5.   The correction deed from Belle Meade Galleria to Long is a nullity as far as the rights, if any, of the Mintons are concerned.

6. Long is entitled to pursue his counter-claim for reformation of the trustee's deed and to quiet title.

The judgment of the trial court granting summary judgment to the Mintons is reversed and the case is remanded for trial on the factual issues drawn between the parties.  Costs of appeal are assessed to the appellees.


_____
WILLIAM B. CAIN, JUDGE


CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, JUDGE  í 8+&$   _ H!_ H!  ß

Following *Dalton v. Eller*, 153 Tenn. 418, 284 S.W. 68 (1926), and the cases disavowing the common law rule, we hold, like *Aszmus v. Nelson* held, that what the trustee intended in conveyance to Third National Bank and what Third National Bank intended in accepting the trustee's deed and conveying the property to Long's predecessors in title are unresolved issues of fact that cannot be determined on summary judgment.

Having determined that a grantor may, without words of grant, vest rights in a third party stranger to the deed, the remainder of this case turns on issues of fact. Unquestionably, the trustee executed and delivered and Third National Bank accepted a deed making what is now the Long property servient to the Parking and Access Easement of record in book 6399 page 533 of the Register's Office of Davidson County. Did the parties to this deed intend thereby to reimpose on the servient estate the Parking and Access Easement in favor of the dominant estate? Conversely, was the inclusion of the language recognizing the easement a mistake on the part of the trustee and the bank as asserted by Long? Did the bank acknowledge and agree to the continued existent of the easement? Did the Mintons rely upon the purported lease of the parking easement by Tropic Properties? Did the Mintons rely upon the conveyance of the parking easement from Tropic Properties? What was the effect of the bank continuing to allow the Mintons the use of the easement prior to its conveyance of the property to Belle Meade Galleria? Why did the bank recognize the purported easement in its conveyance to Belle Meade Galleria? Was alleged reliance by the Mintons on recorded instruments justified? All of the foregoing questions involve factual determinations that can not be determined on summary judgment under principles set forth in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), and *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975).

For the same reasons, estoppel by deed can not be determined on summary judgment in this case: "Before a party can claim an estoppel, there must be on the part of the claiming party; (a) lack of knowledge without fault of the true facts, (b)

reliance upon the untrue facts, and (c) action based on the untrue statement or misrepresentation." *Smith v. Sovran Bank Cent. S.*, 792 S.W.2d 928 (Tenn. App. 1990). It can not be said that the Mintons have established knowledge without fault, reliance or action when this record is considered in the light most favorable to Long as must be done on summary judgment motion. *See Burgess v. Harley*, 934 S.W.2d 58 (Tenn. App. 1996).

Appellant asserts that estoppel by deed can not be asserted by the Mintons as they were strangers to the transactions involved in the trustee's deed to the bank, the deed from the bank to Belle Meade Galleria, and the deed from Belle Meade Galleria to Dr. Long. The Mintons are not, however, strangers to the trustee's deed to the bank but rather the beneficiary of the Parking and Access Easement reserved therein, at least at the summary judgment stage. This too involves questions of fact.

Long next asserts that while the law suit was pending, Belle Meade Galleria delivered to him a deed of correction removing the parking easement exception. This exception is not a property right vested in Belle Meade Galleria but rather on its face an encumbrance upon the property in favor of the dominant estate. The deed of correction thus accomplishes nothing that affects either the Mintons or Long.

Finally, Long asserts that the trial court erred in dismissing *sua sponte* his counter-claim seeking to reform the trustee's deed and to quiet his title to the Parking and Access Easement. Had the trial judge been correct in granting summary judgment to the Mintons on the basis that the foreclosure sale did not terminate the easement and that the intent of the trustee in the deed to Third National Bank was to transfer the property subject to the easement as a matter of law, then it would have logically followed that the dismissal of the counter-claim, whether *sua sponte* or otherwise, was also a correct action. Since, however, we hold that the foreclosure sale terminated the easement and that the intent of the trustee in the conveyance of the property to the bank involves questions of fact, the dismissal of the counter-claim is error. As a remote grantee of the trustee and the bank, Long is in

privity of estate with both and has standing to sue for reformation of the trustee's deed. *Jackson v. Thompson*, 166 Tenn. 174, 61 S.W.2d 470 (1932); *Modica v. Combs,* 249 S.W. 567 (Ark. 1923); 66 Am.Jur.2d *Reformation of Instruments*, § 61 (1973).

Reformation of a deed for mutual mistake is an action in equity and will not lie if it affects intervening rights of third persons who actually and justifiably rely upon recorded instruments. *M.R. Bldg. Corp. v. Bayou Utilities, Inc.*, 637 S.2d 614 (La. Ct. App. 1994). Whether or not the Mintons actually and justifiably relied on instruments of record in the Register's Office of Davidson County involves questions of fact.

III.     CONCLUSION

For the following reasons, we hold as follows:

1. That the trial court erred in granting summary judgment to the Mintons on the basis that the foreclosure sale did not terminate the Parking and Access Easement. In fact, this easement was terminated by the sale at foreclosure.

2. The intent of the trustee in delivering and the intent of Third National Bank in accepting the deed to the servient estate subject to rather than free of the easement is not established as a matter of law but is a question of fact for the trier of fact.

3. The intent of Third National Bank in its deed of the property to Belle Meade Galleria is a question of fact.

4. The question of estoppel by deed is not established as a matter of law but must be determined on the facts developed    at trial.

5. The correction deed from Belle Meade Galleria to Long is a nullity as far as the rights, if any, of the Mintons are concerned.

6. Long is entitled to pursue his counter-claim for reformation of the trustee's deed and to quiet title.

The judgment of the trial court granting summary judgment to the Mintons is reversed and the case is remanded for trial on the factual issues drawn between the

parties.  Costs of appeal are assessed to the appellees.

_____

WILLIAM B. CAIN, JUDGE

CONCUR:

_____

BEN H. CANTRELL, P.J., M.S.


_____

PATRICIA J. COTTRELL, JUDGE