# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 20, 2016 Session

## JACK HELMBOLDT, ET AL. v. MICHAEL R. JUGAN, ET AL.

### Appeal from the Chancery Court for Knox County
### No. 1889211      John F. Weaver, Chancellor
_____

### No. E2015-01664-COA-R3-CV-FILED-JULY 25, 2016
_____

This appeal concerns certain declarations of covenants and restrictions (i.e., a buffer easement) on a piece of property. The purchasers of the property filed a motion for summary judgment arguing that the foreclosure by the bank on its superior mortgage extinguished by operation of law any covenants and restrictions recorded after the bank's deed of trust was recorded. The trial court granted summary judgment in favor of the purchasers. The holders of the buffer easement containing the covenants and restrictions appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, C.J., joined.

D. Scott Hurley and Ryan N. Shamblin, Knoxville, Tennessee, for the appellants, Michael R. Jugan and Anna M. Jugan.

Daryl R. Fansler, Knoxville, Tennessee, for the appellees, Jack Helmboldt and Deborah Helmboldt.


## OPINION

## I. BACKGROUND

The facts in this case are largely undisputed. On or about November 30, 2006, the Towering Oaks Partnership ("Towering Oaks") obtained approximately 13.4 acres of undeveloped land in Farragut, Tennessee ("the Property") by warranty deed. On December 18, 2006, Towering Oaks executed a deed of trust with TNBANK to secure a

$772,000 mortgage the partners had taken on the property. The Property purchased by Towering Oaks was adjacent to land owned by Michael R. and Anna M. Jugan ("the Jugans").

Over three years later, in the months leading up to April 23, 2010, Towering Oaks, through one of its partners, Walter R. Lane, began meeting with TNBANK to negotiate a release of 2.1 of the Property's 13.4 acres from the deed of trust, which they intended to sell for $50,000 to the Jugans.[1] Unbeknownst to TNBANK, Towering Oaks was also negotiating the execution of a Declaration of Covenants and Restrictions ("Restrictions") with the Jugans to create a buffer easement across another portion of Towering Oak's Property adjacent to the Jugans. This buffer easement was described in the Restrictions as being sixty feet in width "across the northern portion of Lots 2, 3, 4, 5, 6, 7, and 8" of proposed development in Ridgeland Park Subdivision. The buffer easement further noted as follows:

> The Buffer shall at all times hereafter remain free from the construction of any improvements, including, without limitation to building, sheds or storage units, swimming pools, tennis courts, decks, gazebos, walking trails, or other similar landscape structures. The Buffer shall not be utilized for drainage purposes, and no drainage retention ponds or field lines shall be constructed thereon. Brush and vegetation shall not be cleared or trimmed, except that non-indigenous, invasive species, as identified by the State of Tennessee or a political subdivision thereof may be removed in a manner that does not impact other vegetation or trees within the Buffer. Standing or fallen trees shall not be cut or removed from the Buffer, except that diseased or damaged trees which, because of a damaged or diseased condition, present a falling hazard beyond the Buffer may be pruned or removed.

The easement additionally stated that a landscaping fence would be erected and maintained "so as to substantially block the view between Ridgeland Park Subdivision and the Jugan property." Its terms and provisions were to be binding upon Towering Oaks and "its successors and assigns" and "run with the land for a period of fifty (50) years."

On April 23, 2010, two notable events occurred. First, in exchange for a collateral substitution, TNBANK agreed to and executed a partial release of 2.1 acres of the Property from the deed of trust. Towering Oaks then sold the 2.1 acres to the Jugans, leaving approximately 11 acres of undeveloped land as part of the Property. On the same

---

[1] The other partner was Mark Gheen.

day, the Restrictions were executed and recorded between Towering Oaks and the Jugans regarding a portion of the acreage remaining in the Property subject to the deed of trust.

Leading up to August 30, 2012, Towering Oaks defaulted on its mortgage; TNBANK opted to foreclose on the deed of trust. The Property was advertised for public auction in the *Knoxville News Sentinel* for several weeks prior to the sale. On August 30, 2012, TNBANK obtained the Property by trustee's deed at the foreclosure auction. It was not until after the foreclosure sale that TNBANK discovered the existence of the Restrictions. In regard to the acreage within the purported buffer easement, TNBANK had not executed a release of the deed of trust prior to the foreclosure.

On January 5, 2015, TNBANK entered into a Lot/Land Sale and Purchase Agreement with Jack and Deborah Helmboldt ("the Helmboldts") to purchase the Property. TNBANK agreed to reduce the price of the sale by $10,000 in acknowledgment of the uncertainty as to the validity of the Restrictions.

After purchasing the Property, the Helmboldts filed suit seeking a declaratory judgment to determine the validity of the Restrictions. They filed a motion for summary judgment averring that TNBANK never subordinated its deed of trust to the Jugans' Restrictions and that TNBANK's foreclosure of the deed of trust extinguished the Restrictions as a matter of law.

In their response, the Jugans entered affidavits from defendant Michael Jugan and the President of TNBANK, Thomas E. Tuck, along with the deposition of then-senior credit officer, Mark Holder. The Jugans asserted a defense of equitable estoppel, stating, inter alia, that TNBANK was aware that the Jugans purchased the 2.1 acres in reliance on the Restrictions being effective on the remaining Property of Towering Oaks.

On July 30, 2015, the court ordered a grant of summary judgment in favor of the Helmboldts, stating that the 2012 foreclosure extinguished the Jugans' Restrictions as a matter of law.

## II. ISSUE

The dispositive issue on appeal is whether the trial court erred in granting summary judgment to the Helmboldts by determining that the Jugans' Restrictions were extinguished by foreclosure of TNBANK's deed of trust by operation of law.

## III. STANDARD OF REVIEW

A motion for summary judgment is a question of law and we review it de novo with no presumption of correctness to the trial court's decision. *Rye v. Women's Care*

*Ctr. Of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Rye*, 477 S.W.3d at 265 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). It must indicate specific facts in the record "which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265.

## IV. DISCUSSION

The Jugans contend that although foreclosure of a priority mortgage generally has a preclusive effect on any junior encumbrances, such is not the case here. Rather, the Jugans would have us hold that their Restrictions survived the foreclosure due to language in the original deed of trust, the trustee's deed, and the Purchase and Sale Agreement between TNBANK and the Helmboldts, which stated that the Property was subject to restrictions, easements, reservations, and covenants of record. We respectfully disagree.

The general rule in Tennessee regarding the foreclosure of a superior mortgage has been well-settled for many years. That rule states that "the purchaser at a regular foreclosure sale 'takes the mortgagor's title divested of all incumbrances made since the creation of the power.'" *Home Owners' Loan Corp. v. Guaranty Title Trust Co.*, 76 S.W.2d 109, 111 (Tenn. 1934) (citing 5 *Thomp. On Real Real Property*, § 4838; *Jones on Mortgages* (7 Ed.), § 1897 (the effect of the foreclosure being "to extinguish the second mortgage")). Although the instant case does not deal with first and second mortgages but rather deals with a priority mortgage and later-established buffer easement, it "appears to be settled" that "the same rule applies when the post-mortgage encumbrance is an easement." *Minton v. Long*, 19 S.W.3d 231, 234 (Tenn. Ct. App. 1999).

Other jurisdictions have rules comparable to Tennessee's. In *Rhodes v. Anchor Rode Condominium Homeowner's Association*, the Supreme Court of Georgia held that the easement-at-issue was extinguished as an operation of law when the bank foreclosed on their priority security interest. *See Rhodes v. Anchor Rode Condo. Homeowner's Ass'n*, 508 S.E.2d 648, 649-50 (Ga. 1998); *see also*, *Prestwood v. Weissinger*, 945 So. 2d, 458, 461-462 (Ala. Civ. App. 2005) (stating that "the general rule [in Alabama] is that the foreclosure of a mortgage terminates an easement that is recorded after the mortgage, subject only to the junior easement holders right to redeem under § 6-5-248, Ala. Code 1975."). In *Rhodes*, as in the instant case, the defendant was granted an easement on the property after a security interest had already been established. *See* 508 S.E.2d at 650. Moreover, the holder of the security interest "did not join in the easement grant,

- 4 -

subordinate their rights, or otherwise release the servient property." *Id*. (detailing the reasons why "the easement remained subject to the security deed"). The Georgia court held that because the "validity of the foreclosure [was] not at issue and, [because] the easement was subject to the security deed, [the defendant's] easement was extinguished by the foreclosure." *Id*.

The undisputed facts in this case show that TNBANK never released the affected area of the Property, never subordinated its interest, nor even contemplated the existence of the contested buffer-easement prior to the foreclosure. The Jugans submitted the affidavit of Mr. Tuck, the President of TNBANK, and the deposition of Mr. Holder, a senior credit officer at TNBANK, in response to the Helmboldts' motion for summary judgment. These documents support a single conclusion: that there was a lack of knowledge by the bank and a lack of affirmative action taken toward granting a buffer easement to the Jugans. Paragraph 7 of Mr. Tuck's affidavit stated that

> At no time prior to foreclosure did TNBANK execute a release of the deed of trust, releasing that portion of the Property contained within a so-called 'buffer area' purportedly established by the Declaration of Covenants and Restrictions of record in the Register's Office for Knox County[.]

Moreover, Mr. Holder's deposition showed TNBANK's lack of knowledge regarding the buffer easement. Specifically, in an exchange focused on the collateral substitution which led to the creation of the purported buffer area, Mr. Holder had this to say:

> Q. All right. Specifically, did Mr. Lane or Mr. Gheen ever discuss with you any other things that were being requested by M[r.] and Mrs. Jugan other than the conveyance of the roughly two acres of property?
>
> A. To my knowledge, no. Again, the focus of our conversations were Mr. Lane wanted to sell the property. He did not want to pay down any of the proceeds on our loan. So the nature of our conversations from that point forward was what is it going to take for you guys to release that property.
>
> Q. . . . . Specifically, did either Mr. Lane, Mr. Gheen, or anyone else related to the transaction between Towering Oaks and M[r.] and Mrs. Jugan, ever mention to you that the Jugans were requesting that there be a buffer area that would be a part of this transaction, that that buffer would be . . .

restricted in some way?

A.  I don't recall ever having any conversation about that[.]

The record does not show that TNBANK ever subordinated, let alone released, the portion of the Property bearing the alleged Restrictions which the Jugans seek to enforce. Instead, the record only seems to support that TNBANK released 2.1 acres of the Property's original 13.4 acres so that Towering Oaks could sell the land to the Jugans. However, the record does not go further to show that the bank was ever aware that there was also a buffer area granted to the Jugans by Towering Oaks that affected the bank's security interest.

Despite there being no evidence that the buffer area was released from the deed of trust, the Jugans continue to assert that the Restrictions remain valid. They contend that the language in both the trustee's deed and the special warranty deed between TNBANK and the Helmboldts stating that they were "subject to restrictions, easements, reservations, and covenants of record" shielded the buffer easement and allowed it to survive the foreclosure sale. However, the record does not support this assertion.

Deed interpretation in Tennessee is governed by established principles. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 466 (Tenn. 2012). Because deed interpretation is question of law, we review the trial court's findings de novo. *Griffis v. Davidson Cnty. Metro. Gov't.*, 164 S.W.3d 267, 274 (Tenn. 2005); *Presley v. Bennet*, 8560 S.W.2d 857. 859-60 (Tenn. 1993); *Rodgers v. Burnett*, 65 S.W. 408, 411 (Tenn. 1901); *Mitchell v. Chance*, 149 S.W.3d 40, 45 (Tenn. Ct. App. 2004). Our main objective is to ascertain the grantor's intention. *See Hughes*, 387 S.W.3d at 466; *Griffis*, 164 S.W.3d at 274; *Rutherford Cnty. v. Wilson*, 121 S.W.3d 591, 595 (Tenn. 2003); *Hall v. Hall*, 604 S.W.2d 851, 853 (Tenn. 1980). We look to the "words of the deed as a whole" and the circumstances surrounding the deed to ascertain the grantor's intent. *Hughes*, 387 S.W.3d at 466; *Griffis*, 164 S.W.3d at 274; *Shew v. Bawgus*, 227 S.W.3d 569, 576 (Tenn. Ct. App. 2007); *Ottinger v. Stooksbury*, 206 S.W.3d 73, 79 (Tenn. Ct. App. 2006); *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 586 (Tenn. Ct. App. 2005).

Although the described language certainly exists in both the trustee's deed and the special warranty deed, the recorded buffer easement would not affect the trustee's deed. The deed of trust between TNBANK and Towering Oaks was executed and recorded on December 18, 2006. At the time the deed of trust was executed and recorded, the bank took a security interest in the Property. It was not until April 23, 2010, that the buffer easement was executed and recorded between Towering Oaks and the Jugans. TNBANK had not released its deed of trust on that portion of the Property addressed in the Restrictions between Towering Oaks and the Jugans. Towering Oaks lacked the authority to encumber the interest of TNBANK. Although Towering Oaks as owner of

the Property at the time of the Restriction's execution may have intended to give the Jugans a buffer easement, there is nothing in the record to show that TNBANK, in executing the original deed of trust, intended to take a security interest in the Property subject to an easement. Rather, the record indicates that TNBANK's focus with respect to their security interest was wrapped up wholly in the market value of the Property. Mr. Holder's deposition evinces this attitude:

> Q. If the bank had been requested by Towering Oaks to make such a concession, the buffer zone specifically . . . , what process would the bank have gone through to make a decision on whether or not to grant such a request?
>
> A. Our efforts would have been focused on how that impacts the marketability of the property.

When TNBANK accepted Towering Oaks' loan application, it appears that it was interested in getting the most value out of the Property. Easements like other encumbrances generally diminish the fair market value of a property rather than increase its value. To grant the buffer easement against the deed of trust would be to effectively foist an uncontemplated, unwanted easement onto a property where the holder of the security interest executed it prior to any clouds on the title.

Because there is no evidence showing that TNBANK was ever made aware of, subordinated their interest to, or executed a release of the buffer easement prior to the valid foreclosure and sale of the Property, the Restrictions at issue were extinguished as an operation of law when TNBANK foreclosed on its superior interest. Therefore, the Helmboldts' later purchase of the Property by special warranty deed was not subject to the buffer zone easement.

## V. CONCLUSION

The judgment of the trial court is affirmed and the case remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellants, Michael R. Jugan and Anna M. Jugan.

_____
JOHN W. MCCLARTY, JUDGE